Eric Anthony **ABRAHAMS**

v.

**YOUNG & RUBICAM, INC., et al.**

**Civ. No. 5:91cv688 (PCD).**

United States District Court,
D. Connecticut.

June 26, 1992.

Robert P. Herzog, New York City, Eileen McGann, West Redding, Conn., for plaintiff.

Robert N. Chatigny, Hartford, Conn., Thomas D. Barr, Stephen S. Madsen, Frances M. Lynch, Cravath, Swaine & Moore, New York City, for defendants Young & Rubicam, Arthur Klein, Thomas Spangenberg, Steven M. McKenna, Mike Slosberg, Alex Kroll and Edward Ney and Edward J. Daley.

Robert L. Moore, pro se.

## RULING ON MOTIONS TO DISMISS

DORSEY, District Judge.

Plaintiff, a citizen of Jamaica and formerly its Minister of Tourism and Information, brings this action against Young & Rubicam and several of its employees and their associates, alleging violations of 18 U.S.C. § 1961, *et seq.*("RICO"); Conn.Gen Stat. § 42–110b ("CUTPA"); negligence; negligent infliction of emotional distress; intentional infliction of emotional distress; libel and slander. Defendants Young & Rubicam, Arthur Klein, Thomas Spanenberg, Steven McKenna, Mike Slosberg, Edward Ney, and Alex Kroll move to dismiss. Defendants Robert Lowell Moore and Edward Daley each move separately to dismiss.

*Facts*

The events giving rise to this action largely were those alleged in a criminal action in this court in 1990, *United States v. Young & Rubicam*, 741 F.Supp. 334. Plaintiff's allegations comprehensively repeat those in the indictment against Young & Rubicam and others and will not be restated herein in their entirety. The gravamen of the complaint is as follows: In October of 1989, Young & Rubicam and several of its officers were indicted for criminal racketeering stemming from an alleged scheme to pay bribes in order to influence the award of a multi-million dollar advertising contract with the Jamaican Tourist Board ("JTB"). Complaint ¶ 4. Plaintiff was also named in the indictment as the object of the alleged bribes, as was Arnold Foote, a Jamaican through whom Young & Rubicam allegedly funnelled payments to Abrahams. Complaint ¶¶ 4, 25. The scheme to bribe Abrahams was allegedly masterminded by Foote and Moore, who represented themselves as "consultants" to the Jamaican government and who claimed to be able to obtain for Young & Rubicam the JTB advertising account given sufficient pay-offs to plaintiff. Complaint ¶ 11. In fact, plaintiff alleges, Moore and Foote concocted the scheme without his knowledge, keeping all bribes, and engaged in various acts with Young & Rubicam to conceal the scheme. Complaint ¶¶ 11, 64. Plaintiff contends that he had no knowledge of the conspiracy until the indictment was returned on October 6, 1989. Complaint ¶ 95. Plaintiff further argues that statements made by each of the defendants in memoranda circulated within Young & Rubicam, and subsequently to the government, were widely disseminated and led to eventual damage to his reputation and thus to his emotional, financial, political, and social status.[1] Complaint ¶¶ 5, 189.

*Discussion*

A motion to dismiss involves a determination as to whether plaintiff has stated a claim upon which relief may be granted. That standard is articulated more fully in *Fischman v. Blue Cross Blue Shield*, 755 F.Supp. 528 (D.Conn.1990).

1. RICO Claims

■ Defendants move to dismiss Counts I and II, alleging violation of RICO and conspiracy to violate RICO, 18 U.S.C. § 1962(c) and (d). In order to satisfy his pleading burden under RICO, plaintiff must first allege a violation of 18 U.S.C.

---

**1.** On February 9, 1990, Young & Rubicam pled guilty to one count of conspiracy to bribe foreign officials. In return, all additional bribery and RICO charges against the remaining defendants, including plaintiff, were dropped. Complaint ¶ 92.

§ 1962, the substantive RICO statute. *See Town of West Hartford v. Operation Rescue*, 915 F.2d 92 (2d Cir.1990). This requires:

> (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate commerce.

*Id.*, quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). Plaintiff must further allege that he was injured in his business and property by reason of a violation of § 1962. *See id.*

▮ Plaintiff alleges no less than forty-one predicate acts allegedly committed by defendants in furtherance of their scheme to bribe and to conspire to bribe the JTB, all involving the underlying events for which defendants were indicted in the criminal proceeding. However, plaintiff must additionally allege in what way these predicate acts proximately caused injury to his business or property, a burden he has failed to satisfy in this instance. *See Sperber v. Boesky*, 849 F.2d 60, 64 (2d Cir.1988), quoting *Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 747 F.2d 384, 398 (7th Cir.1984), *aff'd.* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (" 'A defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct,' but only to anyone whose injuries were caused 'by reason of a violation of section 1962.' "). Plaintiff clearly states that he knew nothing of the illegal activities of defendants until after the indictment was handed down and received no benefits from them. Plaintiff suggests unequivocally that it was the indictment against him, and the subsequent publicity, that caused injury to his reputation, to his business and political opportunities, and to his social standing. To the extent that plaintiff asserts a claim for indirect injury—that is, defendants' alleged acts caused the government to indict him, which caused his claimed injuries—the causal connection is too tenuous to satisfy

the element of proximate cause required by the statute. *See Sperber*, 849 F.2d at 65 ("Plaintiffs here were neither the target of the racketeering nor the customers of the racketeer. [Defendant] did not cheat or deceive plaintiffs in any way with regard to the particular stocks in question since they did not know he had purchased them illegally."); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir.1990) ("Although [plaintiff's] loss of employment may have been factually caused by defendants' RICO violations, it was not a foreseeable natural consequence sufficient for proximate causation."). Plaintiff claims that defendants engaged in a course of conduct allegedly intended to bribe him, as a result of which they and he were indicted. The result is the events and his asserted damages claimed herein. That result is not alleged to have been the intended, nor even foreseeable, result. Indeed, it is alleged that, except for Moore, the other defendants' scheme was to bribe plaintiff, i.e., that they intended, by their actions, to pay money, indirectly, to plaintiff. The scheme was discovered and plaintiff as well as defendants were prosecuted. As the indictment of plaintiff was not intended, nor was the indictment of any one, it cannot be said that defendants' conduct was a substantial factor reasonably foreseeable as likely to bring about plaintiff's indictment and his resulting damages. Plaintiff was neither the intended target nor victim of defendants' illegal activities.

What is not alleged is that defendants, except Moore, knew that plaintiff was not involved in the scheme, had no knowledge of it, and did not receive the money. The company and its employees would clearly have thought to the contrary. It is totally illogical that money be paid if the person for whom it was intended was not in fact involved. Plaintiff was a necessary participant for the payments to achieve their purpose, as he was the person who could deliver the JTB contract. Thus, it cannot be inferred that Young & Rubicam and its employees have intended, or knew, that plaintiff would be indicted unjustifiably. Even if they should have foreseen indict-

ments resulting from the scheme, their knowledge necessarily suggested that an indictment of plaintiff, if foreseeable, would have been justified, as they would seemingly have acted on the assumption that plaintiff was part of the scheme. That being the case, his indictment would not have been unjustified.

Further, the implication of plaintiff in the scheme, whether voluntarily or per force of the law enforcement investigation, simply demonstrated the clear belief of Young & Rubicam and its employees that plaintiff was the ultimate recipient of the alleged bribes, because they were led to so believe by Foote and Moore and because plaintiff was the person who could produce the intended purpose, delivery of the JTB contract. The United States Attorney credited the story attributed to Foote and Moore that plaintiff was involved, because that evidence was submitted to the Grand Jury. So also, the Grand Jury credited it and found probable cause to believe plaintiff was involved, leading to his indictment.

For all these reasons, plaintiff has failed to allege causation of his injuries by the commission of predicate, substantive RICO violations. Therefore, defendants' motion to dismiss Counts I and II is granted.

### 2. State Law Claims

■ Plaintiff contends that defendants violated CUTPA through the commission of those same predicate acts alleged in Counts I and II. CUTPA provides, in relevant part, that:

[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42–110b, may bring an action ... to recover actual damages.

Conn.Gen.Stat. § 42–110g(a). Here, again, plaintiff fails to causally link the allegations of defendants' illegal activities, of which he allegedly knew nothing, with his alleged injuries. Absent allegations asserting the loss of money or property *as a*

result of defendants' prohibited acts, the motion to dismiss Count III is granted.

Similarly, plaintiff's claims of negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress, Counts IV, V and VI [2], must also be dismissed for failure to allege causation. Although plaintiff claims that defendants knew, or should have known, that their illegal acts would cause harm and damage to plaintiff, it is once again the indictment and events surrounding it that resulted in plaintiff's harm. While it is clear that the decision by the United States Attorney to indict plaintiff cannot be the subject of a negligence or infliction of emotional distress claim, neither can defendants' original commission of illegal acts, for the reasons previously adduced, be denominated the proximate cause of plaintiff's emotional injuries. The motion to dismiss Counts IV, V and VI is, accordingly, granted.

■ Plaintiff also sets forth claims of libel and slander in Counts IX and X against the Young & Rubicam defendants and in Counts VII and VIII against Moore individually. In order to establish a claim for defamation, plaintiff must demonstrate that defendant has published or uttered an unprivileged, false and defamatory statement. *See Strada v. Connecticut Newspapers, Inc.,* 193 Conn. 313, 477 A.2d 1005 (1984). Here, with respect to Counts IX and X, plaintiff refers to statements that were published or uttered initially through internal, private communications within Young & Rubicam, and subsequently to the investigating authorities in the United States Attorney's Office or the Internal Revenue Service. To the extent that the first of these statements constitute the subject of plaintiff's claim, they are, by definition, non-public statements published in confidential memoranda or uttered between and among defendants alone and thus cannot appropriately comprise libelous or slanderous forms of speech. To the extent that plaintiff intends to draw the court's attention instead to statements

---

**2.** In fact, plaintiff declines to address Count VI in its entirety in his memorandum in opposition to defendants' motion to dismiss.

made to the Internal Revenue Service, the Grand Jury, or the United States Attorney's Office, such statements made in the course of judicial proceedings are strictly privileged and are thus precluded from being the source of a libel or slander action. *See Petyan v. Ellis*, 200 Conn. 243, 510 A.2d 1337 (1986). As such, defendants' motion to dismiss Counts IX and X is granted.

Counts VII and VIII, however, while failing to clearly identify to whom or in what manner Moore's allegedly defamatory statements were disseminated beyond the confines of non-public circulation or to investigating authorities in the course of a criminal proceeding, suggest that plaintiff's claims against Moore are of a different nature than those against the Young & Rubicam defendants. Plaintiff refers, for example, to Moore's "written chronicles" distributed to the JTB, in addition to the defendants and to the United States prosecuting agencies. These communications do not clearly fall within either of the categories established above of non-public or privileged statements. Moore mistakenly relies on the Young & Rubicam memorandum in support of his motion to dismiss, although the parties are not similarly situated with respect to the allegations; additionally, defendant curiously raises a factual matter not appearing the complaint concerning a previous libel action by plaintiff against a Connecticut newspaper. Absent any refutation by defendant that the communications identified by plaintiff were either strictly non-public or strictly privileged, defendant's motion to dismiss Counts VII and VIII is denied.

*Conclusion*

For the foregoing reasons, defendants' motions to dismiss Counts I, II, III, IV, V, VI, IX and X (documents # 18 and # 23) are granted. Defendant Moore's motion to dismiss Counts VII and VIII (document # 43) is denied.

SO ORDERED.