Eric Anthony ABRAHAMS,
Plaintiff–Appellant,

v.

YOUNG & RUBICAM INC., Robert Lowell Moore a/k/a Robin Moore, Arthur Klein, Thomas Spangenberg, Steven M. McKenna, Mike Slosberg, Frederick Sturges, Edward J. Daley, Edward Ney and Alex Kroll, Defendants–Appellees.

No. 1314, Docket 94–7802.

United States Court of Appeals,
Second Circuit.

Argued July 20, 1995.

Decided March 8, 1996.

Harry Kresky, New York City (Terence P. O'Leary and Francis W. Wood, of counsel), for Plaintiff–Appellant.

Stephen S. Madsen, Cravath, Swaine & Moore, New York City (Thomas D. Barr, of counsel), for Defendants–Appellees Young & Rubicam Inc., Arthur Klein, Thomas Spangenberg, Steven M. McKenna, Mike Slosberg, Edward J. Daley, Edward Ney, and Alex Kroll.

Before: WINTER, LEVAL, and CALABRESI, Circuit Judges.

WINTER, Circuit Judge:

Eric Anthony Abrahams, a citizen of Jamaica, appeals from Chief Judge Dorsey's dismissal of his complaint. The complaint asserted claims against Young & Rubicam Inc. and various employees (collectively "Y & R"), Robert Lowell Moore a/k/a Robin Moore, and Frederick Sturges,[1] based on alleged violations of the Racketeering Influ-

---

1. The status of appellee Frederick Sturges is unclear. The docket sheet indicates that he is represented by the same counsel that represents Y & R. However, it appears that Sturges is not a Y & R employee, and the Y & R brief does not list him as one of the parties on whose behalf the brief was submitted. No papers were submitted on his behalf. We leave his status to amplification in further proceedings.

enced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.Gen.Stat. § 42–110a *et seq.*, common law intentional infliction of emotional distress, negligence (including the negligent infliction of emotional distress), and defamation. We affirm dismissal of the RICO and intentional infliction of emotional distress claims; we reverse the dismissal of the negligence and defamation claims. We certify the CUTPA claim to the Connecticut Supreme Court.

## BACKGROUND

Although Abrahams's complaint appears to have been drafted by counsel, this action has been essentially prosecuted *pro se*, until counsel drafted a reply brief and argued the appeal in this court. The essential allegations of the complaint were as follows. Abrahams was once the Minister of Tourism and Information for the Government of Jamaica. He also had a private consulting business and other business interests. Y & R, an advertising firm, embarked on a scheme to bribe Abrahams in order to secure the Jamaican Tourist Board ("JTB") advertising account. The plot was hatched by Arnold Foote, a Jamaican, and his associate Robert Lowell (a/k/a Robin) Moore, an American writer with connections in Jamaica. In the early 1980s, Foote and Moore approached Y & R, holding themselves out as "consultants" to the Jamaican government and claiming that they could obtain the JTB advertising account for Y & R by bribing Abrahams. As a result, Y & R paid a total of almost one million dollars to Foote and Moore, most of which was to be funneled to Abrahams. However, Abrahams was never involved in the scheme, and Moore and Foote kept the bribe money for themselves.

Abrahams learned of the scheme only when he, Y & R, and others were indicted in the District of Connecticut on October 6, 1989. Y & R pleaded guilty under the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd–2, to one count of conspiracy to bribe foreign officials. At the plea colloquy, Y & R conceded that there was "no evidence" that any of the money it paid ever actually went to Abrahams. The government thereafter dropped charges against the other defendants, including Abrahams, who at all times maintained his innocence.

Abrahams then brought the instant action, claiming injuries to his reputation and to his emotional, financial, political, and social status resulting from widespread public dissemination of false information about his role in the bribery scheme. He also sought damages for the resultant destruction of his consulting business and other business interests. The district court granted the defendants' motion to dismiss the complaint, except for two defamation claims against Moore. *Abrahams v. Young & Rubicam, Inc.*, 793 F.Supp. 404, 408 (D.Conn.1992). It dismissed the RICO claim on the ground that the predicate acts alleged were not the proximate cause of Abrahams's injuries, *id.* at 407, and found a similar lack of causation between the alleged CUTPA violations and Abrahams's injuries. *Id.* With regard to the negligence and intentional infliction of emotional distress claims, the district court held that the indictment was the cause of Abrahams's injuries and could not be the basis for his claims. *Id.* The district court dismissed the defamation claims against Y & R on the ground that the defamatory statements were either made to law enforcement authorities and thus privileged or were internal communications within Y & R and therefore not published. *Id.* at 407–08. The motion was denied with regard to the two defamation claims against Moore. *Id.* at 408.

On March 22, 1994, the district court ordered Abrahams to appear for a deposition pertaining to the two remaining claims against Moore. Abrahams requested that the defamation claims against Moore be dismissed without prejudice or that he be allowed to amend his complaint to drop those claims so that he could appeal the dismissal of the claims against Y & R. He explained to the court that the dismissal of his other claims "placed [him] both procedurally and financially in a very difficult position" and that forcing him to come to the United States for a deposition would "force [him] to expend [his] limited funds solely as against defendant Moore," against whom a judgment

might be uncollectible. However, on June 15, 1994, the court dismissed with prejudice, pursuant to Federal Rule of Civil Procedure 37(b)(2)(C) and 41(b), the remaining claims against Moore as a sanction for Abrahams's failure to appear for a deposition.

Abrahams then appealed. Neither his *pro se* main brief nor a reply brief filed on his behalf by counsel discussed the propriety of the dismissal of the claims against Moore, and we deem them waived.[2]

## DISCUSSION

Abrahams's claims fall into two categories: statutory claims under RICO and CUTPA, and common law claims. We address these in turn.

### A. *Statutory Claims*

■ In a "suit on a statute"—that is, a suit in which the statute itself grants the recovery, creates the jurisdiction, or permits special damages—the plaintiff must show both that he is within the class the statute sought to protect and that the harm done was one that the statute was meant to prevent. *See* W. Page Keeton et al., PROSSER & KEETON ON THE LAW OF TORTS § 36, at 224–25 (5th ed. 1984) (hereinafter PROSSER & KEETON) (in order to maintain an action based on a particular statute, a plaintiff must bring himself within the class of individuals the legislature intended to protect, and the harm must be one that the statute was intended to prevent); *see also Gorris v. Scott,* L.R. 9 Ex. 125 (1874) (no liability for the loss of sheep washed overboard in a storm, because the purpose of the statute requiring

shipboard pens was to prevent disease, not to prevent sheep from being swept overboard).

■ These requirements are frequently discussed in terms of causation. *See, e.g., Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 265–70, 112 S.Ct. 1311, 1316–19, 117 L.Ed.2d 532 (1992) (to establish injury to business or property "by reason of" a RICO violation, a plaintiff must allege that the predicate acts both factually and proximately caused his injury); *In re American Express Co. Shareholder Litig.,* 39 F.3d 395, 399–400 (2d Cir.1994) (alleged RICO violations were not the proximate cause of losses by American Express shareholders, because the shareholders were "not the intended targets of the RICO violations"). But liability, although discussed under the rubric of causation, does not turn on the existence of factual, but-for causation. Nor does it depend on whether there is proximate causation as that term is used at common law. At common law, so long as the plaintiff category is foreseeable, there is no requirement that the risk of injury to the plaintiff, and the risk of the harm that actually occurred, were what made the defendant's actions wrongful in the first place. With statutory claims, the issue is, instead, one of statutory intent: was the plaintiff (even though foreseeably injured) in the category the statute meant to protect, and was the harm that occurred (again, even if foreseeable), the "mischief" the statute sought to avoid. *See Gorris v. Scott,* L.R. 9 Ex. 125 (1874) (preamble of statute made clear that the "mischief" the statute sought to prevent was only disease and did not encompass the risk of losing sheep off the side of a ship).[3]

---

2. We could not reinstate the claims against Moore without affording him an opportunity to respond to arguments regarding why the dismissal as a sanction was inappropriate and why the complaint states a claim(s) for relief against him. Because the first issue was not argued either by Abrahams *pro se* or by counsel in his reply brief, and the second was argued only by implication, we would have to draft those arguments *sua sponte* so that Moore might respond. Given Abrahams's representations to the district court that he was willing to abandon the claims against Moore and the failure to make pertinent arguments here, we deem the claims waived.

3. The courts that have employed causation language have used that language to ask precisely the same questions that we ask—that is, was the plaintiff in the category of people meant by the statute to be safeguarded, and was the harm that which the act meant to avoid? *See, e.g., Holmes,* 503 U.S. at 265–70, 112 S.Ct. at 1316–19; *American Express,* 39 F.3d at 399–400; *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 24 (2d Cir.1990); *Sperber v. Boesky,* 849 F.2d 60, 64–65 (2d Cir.1988). It may therefore seem that the difference in ways of speaking is of no significance. In one sense, that is true. And the results of all the cases cited are completely consistent with the result we reach today.

We therefore now turn to the question of whether RICO and CUTPA were intended by the legislatures that enacted them to protect Abrahams from the harms he alleges.

### 1. RICO

■ Abrahams's complaint sought relief under RICO, 18 U.S.C. § 1964(c), which allows recovery of treble damages and fees by a plaintiff "injured in his business or property by reason of a violation of [the substantive RICO statute]." *Id.* To state a valid RICO claim, Abrahams had to allege, *inter alia*, the commission of two or more predicate acts constituting a "pattern of racketeering activity." 18 U.S.C. § 1961(5). To that end, Abrahams alleged forty-one predicate acts in violation of New York and Connecticut law. All of these acts involved the bribery conspiracy.

The relationship between the predicate acts and Abrahams's injuries is analogous to that of other RICO plaintiffs to whom we have denied relief. *See American Express,* 39 F.3d at 400 (RICO violations do not give rise to recovery by American Express shareholders because they were "not the intended targets of the RICO violations"); *Hecht,* 897 F.2d at 24 (no recovery for employee's loss of his job and of anticipated commissions because he refused to aid and abet his employer's RICO violations); *Sperber v. Boesky,* 849 F.2d 60, 64–65 (2d Cir.1988) (no RICO recovery by plaintiff investors whose share values declined in the wake of arbitrageur Ivan Boesky's plea of guilty to insider trading).

Abrahams's failure to establish a RICO claim stems from the fact that he was not "the target of the racketeering enterprise." *American Express,* 39 F.3d at 399 (quoting *Sperber,* 849 F.2d at 65); *see also Hecht,* 897 F.2d at 24. That is to say, Abrahams's injuries did not flow from the harms that the predicate acts—bribery, kickbacks, extortion, fraud—were intended to cause and the laws against them were intended to prevent. *See* PROSSER & KEETON § 36, at 224–25. The Y & R scheme was designed to corrupt the process by which the JTB advertising contract was let and to disadvantage Y & R's rivals for that contract. The laws in question were not designed to prevent such conduct. Abrahams was neither an intended target of the scheme nor an intended beneficiary of the laws prohibiting it.

In *American Express,* we addressed closely analogous circumstances and held that a complaint failed to allege a RICO violation. That decision involved a scheme in which American Express published defamatory information about a commercial rival. *Id.,* 39 F.3d at 396–98. The scheme was designed to impede the rival's quest for a license allowing it to enter the Swiss banking market in competition with a bank owned by American Express. *Id.* After the scheme was exposed, American Express paid $8 million in settlement. *Id.* at 398. The appeal was from the dismissal of a derivative action against Amer-

---

But the difference in terminology is nonetheless important. First, use of "no proximate cause" language as the ground for dismissal in statutory cases frequently leads to confusion when the issue of proximate cause is raised in related common law claims. Thus, the district court in the case before us, after analyzing the RICO claim in terms of proximate cause, also dismissed the negligence claim "for the reasons previously adduced" with respect to RICO. *See Abrahams v. Young & Rubicam,* 793 F.Supp. 404, 407 (D.Conn.1992). Second, even if courts or commentators recognize the different meaning that proximate cause (as they use it) has in statutory contexts, as against common-law settings, confusion is likely. Thus, it is easy to think that proximate cause runs further at common law than it does in statutory cases. But this is true only if, as is usually the case, the statutory intent is narrower than the common law rules governing the existence of proximate cause. That is not necessarily the case, however. Thus,

at common law, since *Palsgraf v. Long Island Railroad,* 248 N.Y. 339, 162 N.E. 99 (1928), liability will typically not be found if the category of plaintiff is unforeseeable. Statutory liability is usually more limited, since usually a statute intends to protect only some categories of plaintiff among the large number of foreseeable ones. But, conceivably, some statutes might go beyond the common law and create rights of recovery for plaintiffs who are not foreseeable and who are injured by defendants' wrongdoing. A legislature could do so if it wished. Were such a statute in issue, substantial problems could arise from the continued use of "proximate cause" language to define when plaintiffs are meant by the legislature to be given a cause of action. It is for these reasons, as well as a reluctance to give the same term "proximate cause" two different meanings unnecessarily, that we choose to describe the question before us in terms of what we think it has always involved, rather than by the language frequently used.

ican Express management for damages to the corporation. We held that "the shareholders of American Express were certainly not the intended targets of the RICO violations." *Id.* at 400. Rather, the targets were a competitive rival and the Swiss regulatory authorities. The harm to the shareholders was caused by the public exposure of the scheme and not by the scheme itself. *Id.* Similarly, Abrahams was not the target of Y & R's scheme. Instead, the targets were Y & R's commercial rivals, the JTB, and the Jamaican government. Abrahams was injured, as were the shareholders in *American Express,* by the fallout from the scheme's exposure.

We conclude, therefore, that RICO was not intended to protect plaintiffs such as Abrahams from the harm that befell him and that his complaint fails to allege a claim for relief under RICO.

### 2. CUTPA

■ CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn.Gen.Stat. § 42–110b(a). It allows "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by [the Act to] bring an action ... to recover actual damages." Conn.Gen.Stat. § 42–110g(a).

The claim before us is rather unusual. Bribery to obtain a commercial advantage is surely an unfair trade practice. Abrahams alleges that he was injured by the bribery scheme in his various roles as a public official and a private businessman. The district court held that Abrahams could not recover because, as it had held with regard to the RICO claim, the CUTPA violation and Abrahams's injuries were not causally related. There is no dispositive Connecticut caselaw as to whether CUTPA protects a person in Abrahams's position against the harm that befell him. Any decision of that issue would involve setting parameters on CUTPA claims that might affect numerous other factual situations. We are reluctant to put either a narrowing or expanding gloss on the statute;

not only might it misconstrue Connecticut law, but it might also lead to forum shopping to achieve or avoid federal disposition of unusual CUTPA claims. We therefore sever the CUTPA claim and certify it to the Connecticut Supreme Court by a separate order of this court.

### B. *Common Law Claims*

We next address Abrahams's common law claims.

#### 1. Intentional Infliction of Emotional Distress

■ Abrahams's complaint fails to allege that the appellees intended to injure him. His claim for the intentional infliction of emotional distress was thus properly dismissed.

#### 2. Negligence

■ The district court dismissed Abrahams's negligence claims also on causation grounds. The court stated that although Abrahams alleged that appellees knew or should have known that their actions would injure him, "it is ... the indictment and events surrounding it that resulted in plaintiff's harm. While it is clear that the decision by the United States Attorney to indict plaintiff cannot be the subject of a negligence ... claim, neither can defendants' original commission of illegal acts, for the reasons previously adduced [with regard to RICO]." *Abrahams,* 793 F.Supp. at 407. We disagree.

We are unable to say that Abrahams can prove no set of facts based on his complaint that would entitle him to relief on his negligence claim. First, the RICO ruling is not dispositive of a negligence claim. As noted, RICO is a statute designed to protect certain classes of persons from particular kinds of harms. In the case of a claim based on the violation of a statute, a plaintiff who is either outside the class of beneficiaries or not a victim of the kind of injury the legislation was intended to prevent cannot assert a valid claim. *See* PROSSER & KEETON § 36, at 224–27. However, the duty to act with reasonable care establishes a general standard of conduct and is not limited to protecting

certain classes of persons from particular kinds of harms. Appellees are alleged to have hatched a scheme that, if exposed, would injure an innocent person in Abrahams's circumstances. At this stage of the proceeding, we cannot say that no set of facts can be proven under such an allegation that would support an award for legally cognizable damages. Given the infancy of this matter and the recent entry of new counsel to represent Abrahams, we decline to analyze this claim further.

Second, we are unclear as to the district court's thinking regarding the damage caused by the indictment. We cannot tell whether the court regarded the indictment as an intervening force relieving appellees of their responsibility for the results of their negligence, see RESTATEMENT (SECOND) OF TORTS § 441; PROSSER & KEETON § 44, or whether it believed that as a matter of law a private party cannot be liable for damages resulting from a negligently caused indictment. Moreover, it is unclear why the court believed that damages cannot be recovered for negligently caused "events surrounding" an indictment, whatever they may be. See Abrahams, 793 F.Supp. at 407. Again, we comment no further but leave development of these issues to further proceedings in the district court.

### 3. Defamation

■ Abrahams alleged defamation by Y & R and some of its employees for stating that Abrahams had demanded bribe money and had in fact been bribed. The district court applied Connecticut defamation law in dismissing these claims, holding that all the alleged statements were either: (1) privileged because they were made in the course of judicial proceedings, or (2) unpublished because they were made within the corporate confines of Y & R. Abrahams, 793 F.Supp. at 407–08. It then dismissed the defamation claims. Id.

■ We agree that statements by Y & R personnel to the Internal Revenue Service, the grand jury, and the United States Attor-

ney's Office are privileged because they were made in the course of judicial proceedings. See id. (citing Petyan v. Ellis, 200 Conn. 243, 510 A.2d 1337 (1986)). However, a recent decision of the Connecticut Supreme Court has undermined the district court's conclusion that the statements circulated within Y & R were not "published" for purposes of a defamation claim. Connecticut, like New York,[4] now recognizes that dissemination of a defamatory communication among employees of a corporation can constitute the requisite publication. See Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 27–28, 662 A.2d 89, 103 (1995) (allegedly defamatory statement included in personnel file constitutes "publication"); see also Kennedy v. James Butler, Inc., 245 N.Y. 204, 156 N.E. 666 (1927) (permitting libel action based on circulation of allegedly defamatory letter by corporation to its store managers). In supplementary letter briefs, appellees acknowledge that a publication may thus have occurred when a 1983 memorandum discussing Abrahams and the bribery scheme was circulated among Y & R's employees in New York. Whether there were yet other defamatory statements published does not matter at this stage because we must reverse.

## CONCLUSION

We affirm dismissal of the RICO claim. We sever the CUTPA claim and certify it to the Connecticut Supreme Court. We affirm the dismissal of the intentional infliction of emotional harm claim. We reverse the dismissal of the negligence and defamation claims. Because we believe that the disposition of the certified question by the Connecticut Supreme Court will not affect the discovery needed and that a delay in remanding the reversed common law claims awaiting that disposition is therefore unnecessary, we remand the negligence and defamation claims to the district court. See Horta v. Sullivan, 36 F.3d 210 (1st Cir.1994). We of course retain jurisdiction of the CUTPA

---

4. Neither the district court nor the parties fully addressed the questions of choice of law or statute of limitations. We must in any event remand

and therefore also do not address them other than to flag their existence for further proceedings.

claim pending disposition of the certified question.