Eric Anthony ABRAHAMS, Plaintiff,

v.

YOUNG & RUBICAM, et al., Defendants.

No. CIV. 5:91cv688 (PCD).

United States District Court,
D. Connecticut.

Sept. 17, 1997.

Heather Michelle Brown, Darien, CT, Ridgely W. Brown, Brown & Brown, Darien, CT, Robert P. Herzog, New York City, for Plaintiff.

Thomas Barr, Frances M. Lynch, Stephen S. Madsen, Cravath, Swaine & Moore, New York City, Steven David Ecker, Cowdery & Ecker, Hartford, CT, for Defendants, Young & Rubicam, Inc., Arthur Klein, Thomas Spagenberg, Steven M. McKenna, and Mike Slosberg.

Robert Lowell Moore, Concord, MA, pro se.

### RULING ON MOTION FOR JUDGMENT ON THE PLEADINGS

DORSEY, Chief Judge.

Defendants Young & Rubicam, Inc. ("Y & R"), Arthur Klein ("Klein"), Thomas Span-

genberg ("Spangenberg"), Steven M. McKenna ("McKenna"), Mike Slosberg ("Slosberg"), Edward Ney ("Ney") and Alex Kroll ("Kroll") move for judgment on the pleadings dismissing Plaintiff Eric Anthony's ("Plaintiff") negligence claims. Y & R, Spangenberg and Edward J. Daley ("Daley") move for judgment on the pleadings dismissing Plaintiff's remaining defamation claims.[1] For the following reasons, the motion is **GRANTED**.

## I. BACKGROUND

The following facts from the complaint are assumed to be true for purposes of this motion. This case arises from a criminal prosecution initiated almost eight years ago. Plaintiff is the former Minister of Tourism and Information for the Government of Jamaica. Plaintiff also had a private consulting business. Y & R is an American advertising firm, which entered into a scheme to bribe Plaintiff to obtain the Jamaican Tourist Board ("JTB") advertising account. Arnold Foote, a Jamaican, and Robert Moore, an American writer, held themselves out to Y & R as consultants to the Jamaican government and convinced Y & R to pay them money, which they claimed they would pay to Plaintiff to secure the JTB account. Y & R paid Moore and Foote almost one million dollars, none of which was ever paid to Plaintiff. Plaintiff was not involved in the bribery scheme; Moore and Foote kept all the money for themselves.

Y & R and Plaintiff (as well as others) were indicted on October 6, 1989. It was not until he was indicted that Plaintiff learned of the bribery scheme. Y & R pleaded guilty under the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd–2, to one count of conspiracy to bribe foreign officials. During the plea, Y & R admitted that there was no evidence that they knew of that any money actually went to Plaintiff. The charges against the remaining defendants, including Plaintiff, were subsequently dropped.

Plaintiff then brought a civil action under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110a *et seq.*, and the common law for intentional infliction of emotional distress, negligence, negligent infliction of emotional distress and defamation. He sought damages for injuries to his reputation and to his emotional, financial, political and social status caused by the public dissemination of false information about his alleged part in the bribery scheme. He also sought damages for loss to his consulting business, as well as other business interests.

Plaintiff's RICO and CUTPA claims were dismissed due to a lack of causation between the alleged wrongful conduct and Plaintiff's injuries. Similarly, Plaintiff's negligent and intentional infliction of emotional distress claims and common law negligence claim were dismissed for Plaintiff's failure to adequately allege causation. The defamation claims were dismissed because the claims were based on privileged and unpublished communications.[2] Plaintiff appealed that decision.

The Second Circuit Court of Appeals affirmed the dismissal of Plaintiff' RICO claim and intentional infliction of emotional distress claim, severed the CUTPA claim and certified it to the Connecticut Supreme Court, and reversed the dismissal of Plaintiff's negligence and defamation claims.

## II. DISCUSSION

### A. Standard of Review

■ Fed.R.Civ.P. 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial. . . ." On a motion for judgment on the pleadings, "the same

---

1. Plaintiff's complaint also asserts claims against Frederick Sturges. Although he is represented by the same attorney as Y & R, no filings have been submitted on his behalf Nonetheless, the disposition of Defendants' motion disposes of Plaintiff's claims against him as well.

2. Plaintiff's defamation claims against Moore (Courts Seven and Eight) were not dismissed. However, based on Plaintiff's representations that he was willing to abandon his claims against Moore, the Second Circuit deemed those claims waived. *See Abrahams v. Young & Rubicam, Inc.*, 79 F.3d 234, 237 n. 2 (2d Cir.1996).

standards that are employed for dismissing a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) are applicable...." *Ad–Hoc Comm. v. Bernard M. Baruch College,* 835 F.2d 980, 982 (2d Cir.1987) (citations omitted). In considering the motion, all of plaintiff's "well pleaded factual allegations ... are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1368, at 520 (2d ed.1990); *see, e.g., Fine v. City of New York,* 529 F.2d 70, 75 (2d Cir.1975). A 12(c) motion will not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### B. Negligence Claims

Defendants move to dismiss Plaintiff's negligence claims on the ground that those claims arise from Defendants' negligent provision of information to law enforcement authorities, which Defendants submit cannot support a negligence claim.

■ Plaintiff's negligence claims were originally dismissed on the basis that: (1) Defendants' illegal acts were not the proximate cause of Plaintiff' injuries; and (2) the decision to indict by the United States Attorney cannot be the subject of a negligence claim. *Abrahams v. Young & Rubicam, Inc.,* 793 F.Supp. 404, 407 (D.Conn.1992), *aff'd in part, rev'd in part,* 79 F.3d 234 (2d Cir.1996). The parties dispute the meaning of the Second Circuit decision reversing the dismissal of these claims. Plaintiff asserts that the court of appeals expressly found that he stated a cognizable claim for negligence in his complaint and, therefore, the adequacy of that claim cannot be revisited here. Plaintiff's Objection to Defendants' Rule 12(c) Motion on the Pleadings ("Pl. Obj."), p. 3. Defendants' contend that the court of appeals left open two issues for resolution here: (1) whether the indictment was " 'an intervening

force relieving appellees of their responsibility;' " and (2) whether " 'as a matter of law a private party cannot be held liable for damages resulting from a negligently caused indictment.' " Reply Memorandum of the Y & R Defendants in Support of their Motion for Judgment on the Pleadings ("Def. Reply"), p. 3 (citing *Abrahams v. Young & Rubicam,* 79 F.3d 234, 240 (2d Cir.1996)).

Although the court of appeals found that it was "unable to say that Abrahams c[ould] prove no set of facts based on his complaint that would entitle him to relief on his negligence claim," *Abrahams,* 79 F.3d at 239, it does not appear that the circuit court conclusively ruled that Plaintiff had stated a valid cause of action for negligence. Instead, in reversing the court of appeals held that the determination that Plaintiff failed to state a claim under RICO was not dispositive of whether Plaintiff had sufficiently alleged causation in support of his common law negligence claims.[3] The court criticized the use of "proximate cause" with respect to statutory claims, which turn not on the common law concept of foreseeability but instead, on whether "the plaintiff (even though foreseeably injured) [is] in the category the statute meant to protect, and was the harm that occurred (again, even if foreseeable), the 'mischief,' the statute sought to avoid." *Id.* at 237 (citation omitted).

The court of appeals expressed its confusion regarding the basis upon which Plaintiff's negligence claims were dismissed *Abrahams,* 79 F.3d at 240. The court of appeals expressly left "development of these issues to further proceedings in the district court." *Id.* Accordingly, consideration of whether Plaintiff has stated a valid claim for negligence is proper.

### 1. Causation

■ Plaintiff's CUTPA claim, like his RICO and negligence claims, was dismissed because Plaintiff "failed to causally link the allegations of defendants' illegal activities, of which he allegedly knew nothing, with his alleged injuries." *Abrahams,* 793 F.Supp.

---

**3.** Plaintiff's negligence claims were dismissed based on the analysis dismissing his RICO claims. *See Abrahams,* 793 F.Supp. at 407.

at 407. The Second Circuit severed Plaintiff's CUTPA claim and certified the following question to the Connecticut Supreme Court: " '[W]hether the [plaintiff's allegations], if proven, constitute 'unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce' within the meaning of [General Statutes] § 42–110b, and whether [the plaintiff] is '[a] person who [has] suffer[ed][a] ... loss of money or property ... as a result of the use or employment of [such] a method, act, or practice' within the meaning of § 42–110g(a)?' " *Abrahams v. Young & Rubicam, Inc.*, 240 Conn. 300, 303 n. 3, 692 A.2d 709 (1997) (citing certification order).

The Connecticut Supreme Court declined to address whether the alleged misconduct constitutes unfair or deceptive trade practices, finding that Plaintiff's injuries were not proximately caused by Defendants' wrongful conduct. The Connecticut Supreme Court assumed that Defendants' actions were prohibited by CUTPA but held that "this assumed violation was not the proximate cause of the injuries to the plaintiff's reputation and business:"

> "In this case, Young & Rubicam's bribery scheme did not, in and of itself, directly harm the plaintiff. The plaintiff has not alleged, nor can it be reasonably inferred from the plaintiff's allegations, that Young & Rubicam either intended or could have foreseen that, as a result of its attempt to bribe the plaintiff, he would be injured by an erroneous indictment for bribery or by publication of the incorrect accusations therein.
>
> \*   \*   \*   \*   \*   \*
>
> Rather, the *proximate cause* of the plaintiff's injuries was the confession that

Young & Rubicam gave to state and federal authorities after its scheme was discovered, in which it implicated the plaintiff as having accepted bribes. It was the confession, not the underlying bribery scheme, that directly and predictably led to the indictment against the plaintiff that damaged his reputation."

*Abrahams*, 240 Conn. at 307–08, 692 A.2d 709 (emphasis added).

An element of negligence is proximate cause—the question is whether Defendants' "conduct in attempting to bribe the plaintiff was [ ] 'a substantial factor reasonably foreseeable as likely to bring about [the] plaintiff's indictment [on false charges] and his resulting damages.' " *Id.* (citing *Abrahams*, 793 F.Supp. at 406).[4] Plaintiff's negligence claims are state causes of action to which the substantive law of the State of Connecticut applies. The Supreme Court of Connecticut held that there is no proximate cause between Defendants' alleged wrongful conduct engaging in the bribery scheme and Plaintiff's damages. Accordingly, Plaintiff's negligence claims premised on Defendants' alleged wrongful conduct in attempting to bribe him are dismissed.[5]

### 2. *Negligently Caused Indictment*

█ Plaintiff's alleged injuries stemmed, not from the bribery scheme, but from the confession that led to the indictment that ultimately damaged his reputation. *See Abrahams*, 79 F.3d at 239; *Abrahams*, 793 F.Supp. at 406; *Abrahams*, 240 Conn. at 308, 692 A.2d 709. The question remains whether Defendants' alleged negligent provision of information, which caused the government to indict Plaintiff, can form the basis of a negligence claim.

---

4. Although the Second Circuit criticized the use of "proximate cause" when referring to statutory causes of action, the Connecticut Supreme Court analyzed causation under CUTPA to mean proximate cause from a foreseeability standpoint, the same analysis applicable to a common law negligence claim. *See Abrahams*, 240 Conn. at 306–07, 692 A.2d 709 (quoting *Stewart v. Federated Dep't Stores, Inc.*, 234 Conn. 597, 662 A.2d 753 (1995), *Doe v. Manheimer*, 212 Conn. 748, 563 A.2d 699 (1989)). Accordingly, the ruling is equally applicable to Plaintiff's negligence claim.

5. Plaintiff argues that the Second Circuit's refusal to reconsider its ruling with respect to Plaintiff's negligence and defamation claims on the basis of the Connecticut Supreme Court's ruling precludes consideration of the causation issue here. In its May 23, 1997 Order, dismissing the CUTPA claim, the Second Circuit did not articulate why it declined to reconsider its prior ruling on Plaintiff's negligence and defamation claims and thus, there is no bar to considering the issue on remand.

Plaintiff fails to cite any Connecticut authority recognizing a cause of action for mere negligence in providing information to law enforcement officers. Connecticut recognizes immunity from liability for individuals who provide information to law enforcement officers. In relation to a malicious prosecution claim, "a proper concern for private assistance to public law enforcement officers requires immunity from liability for malicious prosecution for the citizen who, in good faith, volunteers false incriminating information." *McHale v. W.B.S. Corp.*, 187 Conn. 444, 450, 446 A.2d 815 (1982).[6] The immunity from liability is equally applicable to a negligence action:

> To allow an action in negligence to lie against a citizen if he makes an honest mistake in reporting to the police would have a chilling effect on an important source of information about crime. Citizen cooperation is essential to efficient police operation and should not be stifled.[7]

*LaFontaine v. Family Drug Stores Inc.*, 33 Conn.Supp. 66, 78, 360 A.2d 899 (1976). This immunity attaches even if the informer failed to exercise reasonable care. *Id.* at 76, 360 A.2d 899.[8]

Plaintiff alleges repeatedly in his complaint that Defendants were convinced by "an elaborate charade" by Moore and Foote that Plaintiff was accepting bribes. Complaint ¶¶ 2, 4, 11, 33. Plaintiff does not allege any malice or intent to deceive investigators by Defendants. Defendants believed that Plaintiff was involved in the scheme when they confessed to investigators and implicated Plaintiff as the ultimate recipient of the bribery money, and as Plaintiff alleges, on the belief as induced by Moore and Foote. Although Defendants are not innocent bystanders in this case, the public policy of encouraging the free flow of information regarding criminal activity must nonetheless preclude liability for negligence for the honest, albeit erroneous, information they provided in the course of an investigation.[9] Accordingly, Plaintiff's negligence claims are dismissed.

### C. Defamation

#### 1. Statute of Limitations

■ The court of appeals remanded Plaintiff's defamation claims to the extent such claims were premised on the publication of statements within the confines of Y & R.[10] The publication alleged was of a 1983 memorandum, allegedly circulated among Y & R employees, which implicated Plaintiff in the bribery scheme. Defendants move to dismiss Plaintiff's defamation claims as time-barred.[11]

---

**6.** The Connecticut Supreme Court found a limited immunity only with respect to the first element of a malicious prosecution claim—that the defendant initiated a criminal proceeding. *McHale*, 187 Conn. at 448, 450, 446 A.2d 815.

**7.** There are two bases to protect an informer: "(1) there is no duty of reasonable care owed to the person informed against and as a consequence there is no negligence on which the informer can be held liable, or (2) there is a privilege or immunity granted to the informer in performing his public responsibility." *LaFontaine*, 33 Conn.Supp. at 77, 360 A.2d 899 (citing Prosser, Law of Torts (4th Ed.) § 17, p. 100).

**8.** The court recognized that "there may be a duty on the part of a citizen to use reasonable care to ascertain the true facts when he insists upon, demands or pressures the police to make an arrest." *LaFontaine*, 33 Conn.Supp. at 75, 360 A.2d 899. In that case, the informer may be liable for malicious prosecution for initiating a criminal prosecution. *Id.* Plaintiff does not allege Defendants initiated the criminal proceedings and he did not bring a claim for malicious prosecution.

**9.** Plaintiff does not dispute the law on this issue. Plaintiff argues that this authority is irrelevant because it was not "the indictment itself but [ ] the illegal scheme of conspiracy and bribery, that, for pleading purposes, were a substantial cause of the injuries alleged by the plaintiff." Pl. Obj., p. 6. As discussed, *supra*, based on the allegations in Plaintiff's complaint, his injuries stemmed not from the illegal scheme but from the indictment.

**10.** Plaintiff's defamation claims were previously dismissed because the alleged defamatory statements were found to be either privileged, as relating to judicial proceedings, or unpublished, as they were only made internally at Y & R. Thereafter, the Connecticut Supreme Court ruled that *dissemination of defamatory communications within a corporation constitutes a publication. See Torosyan v. Boehringer Ingelheim Pharmaceuticals Inc.*, 234 Conn. 1, 27–28, 662 A.2d 89 (1995).

**11.** The Second Circuit noted a potential statute of limitations problem. *Abrahams*, 79 F.3d at 240 n. 4.

Connecticut's statute of limitations for defamation claims is "two years from the date of the act complained of." Conn. Gen.Stat. § 52–597 (1996). Plaintiff concedes that he cannot proceed with his defamation claim to the extent such claim is based on statements published in 1983. Plaintiff contends, however, that Defendants "overlook[ ] the likelihood that the defamatory statements in the '1983 memorandum' were republished." Pl. Obj., p. 7.

■ Although the Second Circuit does not require *in haec verba* pleading, i.e., of the exact alleged defamatory words, Fed. R.Civ.P. 8 requires "that the complaint 'afford defendant sufficient notice of the communications complained of to enable him to defend himself' " *Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d Cir.1986) (citation omitted). A plaintiff must plead "what defamatory statements ... were made concerning the plaintiff, when they were made, [and] to whom they might have been made." *Bramesco v. Drug Computer Consultants,* 834 F.Supp. 120, 122 (S.D.N.Y.1993). *Accord: Bobal v. Rensselaer Polytechnic Inst.,* 916 F.2d 759, 762 (2d Cir.1990) (*pro se* complaint alleging defamation was insufficient because plaintiff failed to "plead adequately the actual words spoken, publication or special damages"), *cert. denied,* 499 U.S. 943, 111 S.Ct. 1404, 113 L.Ed.2d 459 (1991); *Wanamaker v. Columbian Rope Co.,* 713 F.Supp. 533, 545 (.D.N.Y.1989) (dismissing defamation claim because plaintiff failed to specify who made the statements, when they were made and in what context, whether they were made to a third party and whether they were written or oral), *aff'd,* 108 F.3d 462 (2d Cir.1997).

Plaintiff's complaint does not sufficiently plead republication of the 1983 memorandum or plead any defamatory statements within the two years preceding this action. Plaintiff cites paragraph 174 of Count Eight (Slander Against Moore) in support of his contention that the 1983 memorandum was republished. Count Eight does not identify any allegedly defamatory statements, but instead, references Count Six (Negligent Infliction of Emotional Distress), which also does not identify any statements. Plaintiff also cites paragraph 182 of Count Nine (Libel against Y & R, Spangenberg and Daley). Paragraph 182 references the 1983 memorandum but does not allege that the memorandum was published after 1983.

Plaintiff also cites allegations of statements made to "employees of the Internal Revenue Service, the United States Department of Justice, and to , another ...," Complaint ¶ 183, which were published in a written memorandum dated September 16, 1989. Complaint ¶ 183. Although recognizing that statements made to law enforcement authorities are not actionable, Plaintiff contends that a reading of paragraph 183 in conjunction with paragraph 184 demonstrates that these statements were made not only to law enforcement authorities, but also "to another" *Id.* ¶ 183. That allegation is wholly insufficient.[12] Plaintiff does not specify who "another" might be or in what context the statements were made. Moreover, Count Nine does not allege that the statements were made after October 7, 1989—the cut-off date to avoid the statute of limitations. Lastly, Plaintiff cites Count Ten in support of his defamation claim. Count Ten, which does not mention the 1983 memorandum, alleges that "Y & R, Spangenberg, and other persons" published the allegedly defamatory statements in Count Seven (Libel As Against Moore), which were uttered by Moore, sometime between October 1980 and the date of the complaint. Again, such general allegations are insufficient to put Defendants on notice regarding the alleged defamatory statements made by Defendants so that they can defend themselves.

#### 2. *Discovery*

■ To avoid dismissal of his defamation claims Plaintiff asserts that "[a]t a mini-

---

12. Plaintiff also cites paragraph 182 in support of his defamation claim. Paragraph 182 is the crux of Plaintiff's statute of limitations problem;

he alleges dissemination of the 1983 memorandum to Y & R and others but does not allege any republication after 1983. Complaint ¶ 182.

mum, plaintiffs [sic] should be allowed to conduct discovery as to when, where and to whom the defamatory statements were repeated." Pl. Obj., p. 10. Plaintiff is not entitled to conduct discovery concerning whether he was defamed. The "purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists." *Stoner v. Walsh*, 772 F.Supp. 790, 800 (S.D.N.Y.1991).

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings [doc. # 115] is GRANTED. The Clerk shall close the file.

SO ORDERED.