## ERIC ANTHONY ABRAHAMS *v.* YOUNG AND RUBICAM, INC., ET AL.
## (15404)

Callahan, C. J., and Borden, Norcott, Katz and Peters, Js.

Argued December 10, 1996—officially released April 8, 1997

*Ridgely W. Brown,* with whom, on the brief, was *Heather M. Brown,* for the appellant (plaintiff).

*Stephen S. Madsen,* pro hac vice, with whom were *Steven D. Ecker* and, on the brief, *Matthew White,* pro hac vice, for the appellees (named defendant et al.).

*Opinion*

BORDEN, J. The sole issue in this appeal, on certification from the United States Court of Appeals for the

Second Circuit, is whether, under the circumstances presented herein, the plaintiff can maintain a claim under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes §§ 42-110a through 42-110q. The plaintiff, Eric Anthony Abrahams, a Jamaican citizen, filed a ten count complaint in the United States District Court for the District of Connecticut, alleging, inter alia, that the named defendant, Young & Rubicam, Inc. (Young & Rubicam),[1] a New York advertising agency, had violated CUTPA by engaging in a scheme wherein it paid approximately one million dollars to a third party in the mistaken belief that the money would be used to bribe the plaintiff, a former Jamaican public official.[2] The plaintiff sought compensation under CUTPA for the damage to his reputation that resulted when Young & Rubicam erroneously reported to Connecticut and federal authorities that the plaintiff had accepted the bribe.

The District Court dismissed the CUTPA claim, concluding that the acts constituting the alleged violation were not the proximate cause of the plaintiff's injuries.

[1] In addition to Young & Rubicam, Inc., a number of its employees and officers were named as defendants in this action, including Arthur Klein, Thomas Spangenberg, Steven McKenna, Mike Slosberg, Edward Daley, Edward Ney and Alex Kroll. We refer to all of these defendants collectively as Young & Rubicam. Two other individuals were also named as defendants in the plaintiff's complaint. All claims against one of them, Robin Moore, have been dismissed. See footnote 5. The status of the other defendant, Frederick Sturges, is unclear. No papers were submitted on his behalf, and he is not mentioned either in the certification order from the United States Court of Appeals for the Second Circuit or in the briefs of either party. See *Abrahams* v. *Young & Rubicam, Inc.*, 79 F.3d 234, 235 n.1 (2d Cir. 1996).

[2] In his original complaint in the District Court, the plaintiff brought numerous other claims against Young & Rubicam, including a claim under the federal Racketeer Influenced and Corrupt Organizations Act and common law claims for intentional infliction of emotional distress, negligence and defamation. See *Abrahams* v. *Young & Rubicam, Inc.*, 793 F. Sup. 404, 407 (D. Conn. 1992); see also *Abrahams* v. *Young & Rubicam, Inc.*, 79 F.3d 234, 239 (2d Cir. 1996). These claims are outside the scope of the questions we certified for review; see footnote 3; and, therefore, we do not discuss them.

*Abrahams* v. *Young & Rubicam, Inc.*, 793 F. Sup. 404, 407 (D. Conn. 1992). The plaintiff appealed to the United States Court of Appeals for the Second Circuit, which asked this court to decide whether the plaintiff's allegations, if proven, would entitle him to relief under CUTPA.[3] *Abrahams* v. *Young & Rubicam, Inc.*, 79 F.3d 234, 239 (2d Cir. 1996). Pursuant to the applicable certification procedures; General Statutes § 51-199a;[4] we

---

[3] Specifically, the Court of Appeals asked this court to answer the following questions: "[W]hether the [plaintiff's allegations], if proven, constitute 'unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce' within the meaning of [General Statutes] § 42-110b, and whether [the plaintiff] is '[a] person who [has] suffer[ed] [a] . . . loss of money or property . . . as a result of the use or employment of [such] a method, act, or practice' within the meaning of [General Statutes] § 42-110g (a)?"

[4] General Statutes § 51-199a provides: "Uniform Certification of Questions of Law Act. (a) This section may be cited as the 'Uniform Certification of Questions of Law Act'.

"(b) The Supreme Court may answer questions of law certified to it by the Supreme Court of the United States, a court of appeals of the United States or a United States district court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of this state.

"(c) This section may be invoked by an order of any of the courts referred to in subsection (b) of this section upon the court's own motion or upon the motion of any party to the cause.

"(d) A certification order shall set forth: (1) The questions of law to be answered; and (2) a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose.

"(e) The certification order shall be prepared by the certifying court, signed by the judge presiding at the hearing, and forwarded to the Supreme Court by the clerk of the certifying court under its official seal. The Supreme Court may require the original or copies of all or of any portion of the record before the certifying court to be filed with the certification order, if, in the opinion of the Supreme Court, the record or portion thereof may be necessary in answering the questions.

"(f) Fees and costs shall be the same as in civil appeals docketed before the Supreme Court and shall be equally divided between the parties unless otherwise ordered by the certifying court in its order of certification.

"(g) Proceedings in the Supreme Court shall be those provided in the rules of said court.

agreed to decide the issue. We agree with the District Court that, even if we were to assume without deciding that Young & Rubicam's scheme, as alleged by the plaintiff, constituted "unfair trade practices" within the meaning of CUTPA, that scheme was not the proximate cause of the plaintiff's injuries. Accordingly, we conclude that the facts in the plaintiff's complaint, even if true, cannot provide the basis for a CUTPA claim against Young & Rubicam and, therefore, we answer the certified questions in the negative.

The Court of Appeals' certification order included the following relevant facts from the plaintiff's complaint. "[The p]laintiff . . . is a citizen and subject of Jamaica. From October 1980 to February 1989, [he] was an elected member of the Jamaican Parliament. In October 1980, [he] was also appointed Jamaican Minister of Tourism and Information and served in that post until about August 1984. In addition, [the plaintiff] has served as the Jamaican Director of Tourism and as a consultant on international tourism and marketing with the Organization of American States. Following his service as Minister of Tourism, [the plaintiff] acted as a consultant to various international businesses in Jamaica.

"Unbeknownst to [the plaintiff], a scheme was concocted by Robin Moore, a writer, and Arnold Foote, Jr., a Jamaican advertising executive.[5] Many activities in furtherance of this scheme took place within the state of Connecticut.

"[Moore and Foote] persuaded [Young & Rubicam] that bribes and kickbacks would have to be paid to

---

"(h) The written opinion of the Supreme Court stating the law governing the questions certified shall be sent by the clerk under the seal of the Supreme Court to the certifying court and to the parties.

"(i) This section shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it."

[5] Moore was named as a defendant in the plaintiff's original complaint, but all claims against him have been dismissed. See *Abrahams* v. *Young & Rubicam, Inc.*, supra, 79 F.3d 236–37.

Foote and to [the plaintiff] to influence the decisions of the Jamaican Tourist Board . . . to ensure that [Young & Rubicam] would receive the lucrative [Jamaican Tourist Board] advertising account. During the course of the scheme, [Young & Rubicam] paid close to one million dollars . . . in bribes to Moore and Foote. However, no money was ever paid to [the plaintiff], who neither demanded money nor was in a position to influence the award of the . . . contract.

"In October 1989, the scheme was publicly exposed by a federal indictment . . . returned by a grand jury in Hartford, Connecticut. On February 9, 1990, [Young & Rubicam] pled guilty to knowingly and intentionally conspiring to pay bribes to influence the decision of the [Jamaican Tourist Board] in awarding its advertising account. Because [Young & Rubicam] and other defendants falsely implicated [the plaintiff] in their scheme, [the plaintiff] was also indicted.[6] However, this indictment was later dismissed.

"News regarding the criminal indictment of [Young & Rubicam], including false statements by a number of defendants that depicted [the plaintiff] as a criminal, was widely published. As a result, [the plaintiff's] professional reputation was damaged, and his consulting business destroyed. His personal reputation was also severely impaired, and he suffered severe emotional distress, humiliation, and depression."

In order to address whether these facts, if proven, would form the basis for a CUTPA claim, we first set

---

[6] Although the plaintiff stated in his complaint that he is innocent of all bribery charges, he did *not* allege that Young & Rubicam "knew that [the] plaintiff was not involved in the scheme, had no knowledge of it, and did not receive the money." *Abrahams* v. *Young & Rubicam, Inc.*, supra, 793 F. Sup. 406. Indeed, the plaintiff specifically stated in his complaint that Young & Rubicam *was* "convinced" by the bribery scheme. Accordingly, nothing in the record or pleadings indicate that, at the time Young & Rubicam made its confession to authorities, it believed anything but that the plaintiff *had* been a willing participant in the bribery scheme.

forth the basic elements of such an action. CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). In order to enforce this prohibition, CUTPA provides a private cause of action to "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice . . . ." General Statutes § 42-110g (a); see generally *Fink* v. *Golenbock*, 238 Conn. 183, 212–13, 680 A.2d 1243 (1996).

Thus, in order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act *and* that, "as a result of" this act, the plaintiff suffered an injury. The language "as a result of" requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff. See generally *Haesche* v. *Kissner*, 229 Conn. 213, 223–24, 640 A.2d 89 (1994). With regard to the requisite causal element, it is axiomatic that proximate cause is "[a]n actual cause that is a substantial factor in the resulting harm . . . ." *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 606, 662 A.2d 753 (1995). The question to be asked in ascertaining whether proximate cause exists is "whether the harm which occurred was of the same general nature as the foreseeable risk" created by the defendant's act. (Internal quotation marks omitted.) *Doe* v. *Manheimer*, 212 Conn. 748, 758, 563 A.2d 699 (1989). Proximate cause does not exist merely because there is cause in fact. "Philosophically, cause in fact is limitless; but for the creation of this world, no crime or injury would ever have occurred. . . . Lines must be drawn determining how far down the causal continuum individuals will be held liable for the consequences of their actions." (Citations omitted; internal quotation marks omitted.) *Stewart* v. *Federated Dept. Stores, Inc.*,

supra, 605–606, citing W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 41, p. 264, and § 42, p. 273. "This line is labeled 'proximate cause.' " *Suarez* v. *Sordo*, 43 Conn. App. 756, 769, 685 A.2d 1144 (1996).

We assume, without deciding, that the bribery scheme in which Young & Rubicam engaged is an act of the type proscribed by CUTPA.[7] We conclude, however, that this assumed violation was not the proximate cause of the injuries to the plaintiff's reputation and business. "Although the issue of causation generally is a question reserved for the trier of fact . . . the issue becomes one of law when the mind of a fair and reasonable person could reach only one conclusion, and summary judgment may be granted based on a failure to establish causation." 1 R. Langer, J. Morgan & D. Belt, Connecticut Unfair Trade Practices Act (1994) § 6.10, p. 231; see also *Mather* v. *Griffin Hospital*, 207 Conn. 125, 130, 540 A.2d 666 (1988).

In this case, Young & Rubicam's bribery scheme did not, in and of itself, directly harm the plaintiff. The plaintiff has not alleged, nor can it be reasonably inferred from the plaintiff's allegations, that Young & Rubicam either intended or could have foreseen that, as a result of its attempt to bribe the plaintiff, he would be injured by an erroneous indictment for bribery or by publication of the incorrect accusations therein.[8] In other words, Young & Rubicam's conduct in attempting to bribe the plaintiff was not "a substantial factor reasonably foreseeable as likely to bring about [the] plaintiff's indictment [on false charges] and his resulting damages. [The p]laintiff was neither the intended target nor victim of [Young & Rubicam's] illegal activities." *Abrahams* v. *Young & Rubicam, Inc.*, supra, 793 F.

---

[7] We state no opinion as to whether Young & Rubicam's bribery scheme did, in fact, constitute an unfair act or practice within the meaning of CUTPA.

[8] Indeed, on the contrary, the plaintiff alleged that Young & Rubicam was convinced of the plaintiff's complicity. See footnote 6.

Sup. 406. It is true that the plaintiff would not have been harmed but for the existence of the bribery scheme. As explained previously, however, mere "but for" causation is not sufficient to support a CUTPA claim.

Rather, the proximate cause of the plaintiff's injuries was the confession that Young & Rubicam gave to state and federal authorities after its scheme was discovered, in which it implicated the plaintiff as having accepted bribes.[9] It was the confession, not the underlying bribery scheme, that directly and predictably led to the indictment against the plaintiff that damaged his reputation. As the Court of Appeals observed, the plaintiff was injured not by the bribery scheme itself, but "by the fallout from the scheme's exposure." *Abrahams* v. *Young & Rubicam, Inc.*, supra, 79 F.3d 239.

The plaintiff has never asserted that Young & Rubicam's act of confessing was itself an unfair act or practice that violated CUTPA.[10] Thus, on the one hand, the practice that assumedly did violate CUTPA—the bribery scheme—was not the proximate cause of the plaintiff's losses. On the other hand, the act that *was* the proximate cause—Young & Rubicam's statement to authorities—was not pleaded by the plaintiff as being the type of act that CUTPA was intended to prohibit.

[9] The plaintiff argues that the question of whether his injuries were proximately caused by the bribery scheme or by Young & Rubicam's subsequent statement to authorities is a question for the fact finder and not amenable to judgment as a matter of law. Although the plaintiff argues at some length in his brief that the bribery scheme itself was the proximate cause of his injuries, his reasoning is entirely conclusory and unpersuasive. We are persuaded that, as a matter of logic and of law, Young & Rubicam's confession, and not the underlying bribery scheme, was the proximate cause of the plaintiff's injuries.

[10] Moreover, as noted previously; see footnote 6; the plaintiff nowhere alleged that Young & Rubicam intentionally misled investigators, or that it lacked an honest belief that the plaintiff had, in fact, accepted bribes. We state no opinion as to whether, if such allegations *had* been made, the plaintiff could have sufficiently pleaded a CUTPA claim based upon Young & Rubicam's statement to authorities.

Accordingly, we conclude that the plaintiff has not stated a cause of action under CUTPA.

The answer to the certified questions is: No.

No costs will be taxed in this court to either party.

In this opinion the other justices concurred.