[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT BY MINNESOTA MINING MANUFACTURING COMPANY
The legally operative facts of all five cases are essentially the same. The plaintiffs allege injuries as a result of breast implants received through surgical procedures performed on them. The cases are included in a "master file" for the administrative management of in excess of 160 individual silicone gel breast implant product liability and physician negligence cases filed in Connecticut under the caption Inre: Connecticut Breast Implant Litigation, No. X06 CV-93-0999999S. These vintage cases represent only a small portion of thousands of similar claims filed in state and federal courts throughout this country. Many of these cases have experienced extensive travel, having been removed to the Connecticut federal court, then transferred to the District Court for the Northern District of Alabama as part of the multi-district litigation (MDL-926). Some of the cases were remanded from the Alabama federal court to the United States District Court for the District of Connecticut, which subsequently remanded the cases to the Connecticut Superior Court.
The processing of these cases has further been delayed by the Dow Corning Corporation (Dow) bankruptcy. Dow and its affiliates were defendants in most cases, inasmuch as Dow was one of the leading manufacturers of silicone breast implants. CT Page 4482
One defendant in the above-captioned cases is Minnesota Mining 
Manufacturing Company (3M), which defendant has moved in all of the above five cases for summary judgment on counts one and two of the plaintiffs' complaint, those counts uniformly being the ones asserted against 3M. Count one alleges violations of the Connecticut Product Liability Act (General Statutes § 52-572m et seq). Count two asserts claims pursuant to the Connecticut Unfair Trade Practices Act (General Statutes § 42-110a et seq). The grounds for 3M's motions are simply that it did not manufacture or sell the breast implant product at issue in each case, therefore entitling 3M to judgment as a matter of law.
The undisputed facts asserted in affidavits provided by the movant establish the following with respect to 3M's involvement in the breast implant business. Donald K. McGhan and other parties in November of 1974 established McGhan Medical Corporation (McGhan I), which began manufacturing and selling breast implants in 1975. In June of 1977, a subsidiary of 3M, a Delaware corporation also named McGhan Medical Corporation (McGhan II), acquired all of the business assets and goodwill of McGhan I. McGhan I was formally dissolved and McGhan II began manufacturing and selling breast implants as a wholly owned subsidiary of 3M. McGhan II's business was merged into 3M in 1980 and became a part of 3M's surgical products division, at which time McGhan II was formally dissolved.
In August of 1984, 3M decided to sell its plastic surgery product line, which included the breast implant business, to Donald K. McGhan, the founder of McGhan I. The price was 5.5 million dollars, with a 4 million dollar loan from 3M. Donald K. McGhan and his partners incorporated a new California corporation which again was called McGhan Medical Corporation (McGhan III), but which was a separate and distinct corporation from both McGhan I and McGhan II. McGhan III is a co-defendant in this case. Effective August 3, 1984, in accordance with the terms of a divestiture agreement, 3M turned over its breast implant business, including all files and records, to McGhan III, and as of that date, 3M ceased its manufacture of breast implants. 3M and McGhan III since have operated as completely independent corporations with separate officers and directors. In 1985, McGhan III became a wholly owned subsidiary of First American Corporation (later renamed Inamed), a publically-owned corporation.
The lot numbers of the breast implants surgically implanted into the plaintiffs establish that the implants were manufactured by McGhan III at least several years after the August 3, 1984 divestiture by 3M.
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine CT Page 4483 issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the non-moving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue of material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . ." (Citations omitted.) Appleton v. Board of Education, 254 Conn. 205, 209, 757 A.2d 1059
(2000). "A material fact is a fact that will make a difference in the result of a case . . . the facts at issue are those alleged in the pleadings. . . ." (Citations omitted; internal quotation marks omitted.)Mountaindale Condominium Ass'n v. Zappone, 59 Conn. App. 311, 315,757 A.2d 608 (2000). "In ruling on a summary judgment the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988)
 Connecticut Product Liability Act Claim
The definition section of the Connecticut Product Liability Act defines a product seller in pertinent part as "any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption." General Statutes § 52-572m (a). A manufacturer is defined as a product-seller who designs, assembles, fabricates, constructs, processes, packages or otherwise prepares a product or component part of a product prior to its sale to a user or consumer.
General Statutes § 52-572m (e). "It includes a product seller or entity not otherwise a manufacturer that holds itself out as a manufacturer." Id.
The affidavits attached to 3M's papers establish, and the plaintiffs do not dispute, that 3M did not sell or manufacture the particular silicone breast implants surgically introduced into the plaintiffs. 3M thus stands as the prior producer of the same product.[1]
Courts in other jurisdictions have determined that the prior producer of the same product as a matter of law may not be held liable under product liability theory. See Gansburger v. Rockwell Int'l Corp., No. C 86-6149 TEH (N.D. Cal. Oct. 19, 1988), aff'd, 911 F.2d 738 (9th Cir. 1990). In Gansburger, the defendant Rockwell International Corporation (Rockwell) had fashioned an earlier version of the S-2R-T34 aircraft in which the plaintiff's decedent was killed. Rockwell, however, had not CT Page 4484 manufactured the particular plane involved in the accident. The district court held as follows at page 4 of its decision:
 Construing this factual dispute in a light most favorable to plaintiffs does not change Rockwell's connection to the S-2R-T34. Rockwell's connection remains only that of a past producer of the same product. The California Supreme Court addressed the liability of a producer of the same product in the context of market share liability. See Sindell v. Abbott Laboratories, 26 Cal. 3rd 588 (1980). Sindell established that producers will be liable for their proportion of the injury caused by their product equal to the market share that they control. To avoid liability, a producer must prove that he did not make the exact product that injured the plaintiff. Id. at 612. As a defendant who did not design, manufacture or sell the exact aircraft in which Gansburger crashed, Rockwell has met this burden. Rockwell had no legal duty to ensure the safety of the Ayers Turbo-Thrush S-2R-T34 to Mr. Gansburger.
(Emphasis added.) Gansburger v. Rockwell Int'l Corp., supra, 4. See alsoFricke v. Owens-Corning Fiberglas Corp., 618 So.2d 473, 475 (La.App. 1993) (former owner was not liable for injuries caused by the product manufactured and sold by the new owner of the business ten months after the sale of the business). In Anderson v. Deere Co., 852 F.2d 1244,1247 (10th Cir. 1988), the court affirmed the dismissal of a strict liability cause of action against two defendants on the ground that the plaintiffs could not prove that the defendants were manufacturers of the product because they were not in existence at the time that the product was manufactured. Similar results are found in Baughman v. General MotorsCorp., 627 F. Sup. 871, 874 (D.S.C. 1985), aff'd, 780 F.2d 1131 (4th
Cir. 1986); Arenivas v. Continental Oil Co., 692 P.2d 31 (N.M.Ct.App. 1983); D'Amico v. Manufacturers Hanover Trust Co., 569 N.Y.S.2d 962, 963
(1st Dept. 1991); and Gaulding v. Celotex Corp., 772 S.W.2d 66, 68
(Texas 1989).
The requirement under product liability law that the defendant must be the manufacturer or seller of the specific product that caused the injury also has been recognized in the following decisions: McNamera v. Buhler,Inc., No. 98-CV-0759E(SR), 2000 WL 1773474, at (W.D.N.Y. Nov. 30, 2000,Elfvin, J.), Hymowitz v. Eli Lilly Co., 73 N.Y.2d 487, 504 (1989);Lawless v. O'Brien, 636 N.Y.S.2d 92, 93 (2nd Dep't 1995); Varnado v.Danek Medical, Inc., No. Civ.A.1:98-CV-383RG 1999 WL 1129689; Perez v.Brown Williamson Tobacco Corp., 967 F. Sup. 920, 929 (S.D. Tex. CT Page 4485 1997); Harris v. Newman Machine Co., 641 F. Sup. 146, 148 (S.D. Miss. 1986); Mathers v. Midland-Ross Corp., 532 N.E.2d 46 (Mass. 1989)
In similar cases involving 3M, other courts that have considered this factual scenario have dismissed the claims against 3M. See Felker v.McGhan Medical Corp., 36 F. Sup.2d 863 (D. Minn. 1998); Healy v. McGhanMedical Corp., No. CA975320, 2001 WL 717110 (Mass.Super. March 29, 2001, Doerfer, J.); Christian v. Minnesota Mining Manufacturing Co.,126 F. Sup.2d 951 (D.M.D. 2001); Roberts v. Bioplasty, Inc., No. 93-2967 (E.D. La. February 11, 2000); McCarthy v. McGhan Medical Corp., No. 94 L 7366 (Ill. Cir. Ct. Feb. 27, 1998.); and McConkey v. McGhan MedicalCorp., 144 F. Sup.2d 958, 963 (E.D. Tenn. 2000).
 Connecticut Unfair Trade Practices Act Claim
The Connecticut Unfair Trade Practices Act, General Statutes §42-110a, contains the legislative definition of the terms "trade" and "commerce" as follows: "The advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed and any other article, commodity or thing of value in this state." It is difficult to imagine how the "prior manufacturer of a product" might fit under this definition of trade or commerce, and thus be subject to the prohibitions of General Statutes § 42-110b (a) relating to unfair methods of competition and unfair and deceptive acts or practices in the conduct of such trade or commerce. The Connecticut Supreme Court in Vaccov. Microsoft Corp., 260 Conn. 59 (2002), recently reiterated the following with respect to
CUTPA:
 Notwithstanding the elimination of the privity requirement, we previously have stated that it strains credulity to conclude that CUTPA is so formless as to provide redress to any person, for any ascertainable harm, caused by any person in the conduct of any trade or commerce. . . . Thus, notwithstanding the broad language and remedial purposes of CUTPA, we have applied traditional common law principles of remoteness and proximate causation to determine whether the party has standing to bring an action under CUTPA. See, e.g. Ganim v. Smith Wesson Core., supra, 258 Conn. 313, 372-73; Abrahams v. Young Rubicam, Inc., 240 Conn. 300, 306-308, 692 A.2d 709 (1997); Haesche v. Kissner, 229 Conn. 213, 222-24, 640 A.2d 89 (1994)
CT Page 4486 (Citations omitted; internal quotation marks omitted.) Vacco v.Microsoft, supra, 88.
 CONCLUSION
The defendant 3M's motions for summary judgment are granted as to both counts in all of the five above-captioned cases.
 ___________________, J. ROBERT F. McWEENY