MEMORANDUM OF DECISION ON DEFENDANT, PLAN “B”, MOTION FOR SUMMARY JUDGMENT

WILSON, Judge.
In this action the Plaintiff seeks to recover damages for personal injuries he alleges were caused by the recklessness of the Defendant, Plan B, LLC. In Count Two of his Sixth Amended Complaint the Plaintiff alleges that on or about November 21, 2003, at approximately 10:30 p.m., he was a patron of the Mohegan Sun Casino. At that time he was descending the escalator adjacent to Big Bubba’s 15BQ when he was caused to fall off the escalator and he thereby sustained injuries and damages more particularly set forth in the complaint.
He alleges that the Defendant, Plan B, LLC, owned and operated a restaurant known as Lucky’s, a bar known as the Dubliner, and a night club known as Club Ultra 88, all located within the casino. He also alleges that between approximately 8:00-10:30 p.m., the Defendant’s agents, servants, and/or employees served the Plaintiff alcohol and continued to serve the Plaintiff alcohol despite knowing that the Plaintiff was obviously visibly intoxicated. In paragraph 7 he more particularly alleges as follows:
“7. The injuries and damages sustained by the plaintiff, Jeffrey Murphy, were caused by the recklessness of the defendant, Plan B, LLC, its agents, servants and/or employees in one or more of the following ways in that they:
a. Served and/or sold alcoholic beverages to the plaintiff when they knew that the plaintiff was in an obviously visibly intoxicated condition;
b. Continued to serve and/or sell alcoholic beverages to the plaintiff when they knewr that the plaintiff was visibly intoxicated exhibited such behaviors as stumbling and slurred speech;
c. Failed to [properly] supervise the service and/or sale of alcoholic beverages on its premises;
d. Breached its duty of care to the plaintiff in failing to stop the sendee and/or sale of alcohol when they knew the plaintiff was in an obvious- . ly intoxicated condition;
*587 e. Failed to properly train its staff in order to prevent the distribution, service and/or sale of alcohol to individuals showing obvious visible signs or symptoms of intoxication;
f. Failed to provide a reasonably safe environment in which alcoholic beverages could be consumed by its patrons;
g. Failed to render proper aid in assistance to the plaintiff when they knew he was in an obviously intoxicated condition;
h. Failed to use reasonable care in order to reasonably ensure the safety of its patrons and in particular the plaintiff when they knew of his obviously visibly incapacitated condition; and
i. Failed to act in a reasonably prudent manner in light of the circumstances existing at all times relative herein.”
Issues related to the Plaintiffs claims of recklessness against the Defendant have been before this court previously. In Murphy v. Mohegan Tribal Gaming Authority, 3 G.D.R. 11, 6 Am. Tribal Law 580, 2006 WL 6181099 (2006) this Court denied a motion to strike the recklessness count, on the ground that it was not briefed. In Murphy v. Mohegan Tribal Gaming Authority, Docket No. GDTC-T-04-116-TBW, 7 Am. Tribal Law 422, 2007 WL 5971309 (2007) (Wilson, J.), the court granted a motion to strike the recklessness count on the ground that the Plaintiffs allegations did not sufficiently state a cause of action. The Plaintiff then re-pleaded, sufficiently stating such a cause of action.
The Defendant, Plan B, LLC has now moved for summary judgment on the ground that there are no genuine issues of material fact and that the Defendant, Plan B, LLC is entitled to judgment as a matter of law. The Plaintiff opposes the motion, briefs and documentary evidence and affidavits have been filed, and oral argument has been had. For the reasons to be stated, the Defendant, Plan B, LLC’s motion is denied.

STANDARD OF REVIEW

The Court has set forth the standard of review on several occasions. In Carpenter v. Mohegan Tribal Gaming Authority, Docket No. GDTC-D-05-128-FAM, 7 Am. Tribal Law 418, 2007 WL 5969370 (2007) (Manfredi, J.) the Court stated:
The standard for review of a Motion for Summary Judgment is well established and is as set forth as follows:
“The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried.” Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ... In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party ... The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law ... and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. [S]um-mary judgment is appropriate only if a fair and reasonable person could conclude only one way . . . [A] summary disposition ... should be on evidence which a jury would not be at liberty to *588 disbelieve and which would require a directed verdict for the moving party. (Internal quotation marks omitted. Citations omitted.) Vento v. Safeco Insurance Company of America, 2006 WL 2053606, (Conn.Super.2006)
Furthermore, “in determining whether a genuine issue has been raised, the inferences to be drawn from the underlying facts revealed in the affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable in the party opposing the motion.” Tomka v. Seiler, 66 F.3d 1205, 1304 (2d Cir.1995).”
“The Second Circuit has also stated that: In discrimination cases where state of mind is at issue, we affirm a[nd] grant a summary judgment in favor of an employer sparingly because careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination.” Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir.2003) (internal quotation omitted).
In Bero v. Ham, DN CV0203899474, 2006 WL 491710 (Feb. 15, 2006), (Arnold, J.) the Connecticut Superior Court has set forth the standard as follows:
“The standard for consideration of a motion for summary judgment is well-established. A Motion for Summary Judgment is designed to eliminate the delay and expense of litigating an issue where there is no real issue to be tried.” Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). “In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party.” Hertz Corp. v. Federal Ins. Co., 245 Conn. 374, 381, 713 A.2d 820 (1998). In ruling on a motion for summary judgment, the court’s function is not to decide issues of material fact, but rather to determine whether any issues exist. Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. Hertz Corp. v. Federal Ins. Corp., supra, 245 Conn, at 381, 713 A.2d 820. “The opposing party must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact.” Id. “A material fact is a fact which will make a difference in the result of the case.” Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 639 A.2d 507 (1994).
The test used by the court is to determine if the moving party would be entitled to a directed verdict if the same set of facts were presented at trial. Connell v. Colwell, 214 Conn. 242, 246-47, 571 A.2d 116 (1990). A directed verdict is properly rendered if a trier of fact cannot reasonably and legally find in any fashion other than that directed. Santopietro v. New Haven, 239 Conn. 207, 225, 682 A.2d 106 (1996). The issue of causation is a question of fact for the trier of fact, Abrahams v. Young and Rubicam, Inc., 240 Conn. 300, 307, 692 A.2d 709 (1997), and can only become one of law “when the mind of a fair and reasonable person could reach only one conclusion” Id. Accordingly, “issues of negligence are ordinarily not susceptible of summary judgment adjudication but should be resolved by trial in the ordinary manner.” Fogarty v. Rashaw, 193 Conn. 442, 476 A.2d 582 (1984).
“Summary judgment is ill-adapted to negligence cases, since the conclusion of negligence is normally one of fact.” Velardi v. Ryder Truck Rental, Inc., 178 Conn. 371, 374, 423 A.2d 77 (1979). Nonetheless, “[t]he issue of whether [a] defendant. owes a duty of care is an appropriate matter for summary judgment because the question is one of *589 law.” Pion v. Southern New England Telephone Co., 44 Conn.App. 657, 660, 691 A.2d 1107 (1997).
The defendant has set forth several arguments in support of its motion. The Defendant has also proffered as exhibits the Plaintiffs second, fourth, fifth, and sixth amended complaints, depositions of the Plaintiff and two of his companions who were witnesses, Earl Palmer and Jeremy Bosnia, and a casino surveillance video tape showing the Plaintiffs fall.
In opposition, the Plaintiff also relied on the depositions of the Plaintiff and his two companions, and an affidavit of the expert witness, a toxicologist, Brian Pape, Ph.D. Each party also presented legal authority in support of their arguments. The court has considered this material and will in turn discuss the Defendant’s several arguments.

DRAM SHOP ACT

Once again, the Defendant has argued (e.g., Brief, pp. 16-17) that “pursuant to the Dram Shop Act, [Conn. Gen.Stat. § 30-102] the Plaintiff is barred from ¡bringing a negligence claim under these circumstances.” The Court reiterates that the Dram Shop Act “does not apply to the actions brought by the intoxicated person himself against the seller of alcohol, as is the case here.” Murphy v. Mohegan Tribal Gaming Authority, 3 G.D.R. 11, 12, 6 Am. Tribal Law 580, 581-82, 2006 WL 6181099 (2006). For the reasons more fully stated in that decision, the Court again ¡holds that the Defendant’s reliance on the Dram Shop Act is misplaced.

NEGLIGENCE

The Defendant argues that “Count Two ol the Sixth Amended Complaint is a clear claim of negligence which the Plaintiff has attempted to disguise as recklessness.” (Brief p. 15). The Defendant points particularly to paragraphs 7(f), (h), and (i) as being essentially negligence allegations. (The Defendant might also have mentioned 7(c) and (e) as being essentially negligence claims). The Court has previously held that Connecticut law does not allow such claims. Murphy v. Mohegan Tribal Gaming Authority, 3 G.D.R. 11, 13, 6 Am. Tribal Law 580, 582-84, 2006 WL 6181099 (2006) and for that reason such claims will not be considered. The remaining allegations of Count Two in paragraphs 7(a), (b), (d) and (g) do, however, set forth undisguised claims of recklessness sufficient to withstand Defendant’s attempt to strike them in the Motion for Summary Judgment. It is to those allegations that the Court will look to determine if these are genuine issues of material fact sufficient to withstand the Motion for Summary Judgment.

RECKLESSNESS

The crux of the issue before the Court is whether there are any genuine issues of material fact bearing on the questions of whether the Defendant was reckless in serving alcohol to the Plaintiff and whether, if so, it was a substantial factor in producing the Plaintiffs injuries. The Connecticut Superior Court has on occasion considered this issue. In the previously cited case of Bero v. Ham, the Connecticut Court stated as follows:
“Although there is no common law cause of action for negligence sales of alcohol to an intoxicated patron who causes injury, vendors may be liable for the injurious consequences of wanton and reckless sales of alcoholic beverages to an intoxicated person, who in turn, brings about injuries as a result of intoxication.” Kowal v. Hofher, 181 Conn. 355, 436 A.2d 1 (1980).
*590 The question before us, then is whether those policy considerations which might justify protecting both a vendor and a social host from common-law liability for the injurious consequences of negligent conduct constitutes wanton and reckless misconduct. We hold that they do not. This conclusion is based primarily on the notion that one ought to be required, as a matter of policy, to bear a greater responsibility for consequences resulting from his act when his conduct is reckless or wanton than when his conduct is merely negligent. See Restatement (Second), 2 Torts 501, comment (a).
Id. at 360-61, 436 A.2d 1; see also Craig v. Driscoll, supra, 262 Conn. 312, 324-26, 813 A.2d 1003 (2003) discussing Kowal v. Hofher, supra, 181 Conn. 355, 436 A.2d 1.
To establish liability for a reckless sales of alcohol, plaintiffs must allege and establish facts indicating that the defendants continued to serve a patron despite observable Or manifest signs of intoxication or service to an obviously intoxicated individual. Proof of sale to an intoxicated person requires proof of something more than to be merely under the influence of, or affected to some extent by, liquor.
Intoxication means an abnormal mental or physical condition due to the influence of intoxicating liquors, a visible excitation of the passions and impairment of the judgment, or a derangement or impairment of physical functions and energies. When it is apparent that a person is under the influence of liquor, when his manner is unusual or abnormal and is reflected in his walk or conversation, when his ordinary judgment or common sense are disturbed or his usual will power temporarily suspended, when these or similar symptoms result from the use of liquor and are manifest, a person may be found to be intoxicated. He need not be ‘dead-drunk.’ It is enough if by the use of intoxicating liquor he is so affected in his acts or conduct that the public or parties coming in contact with him can readily see and know this is so.
(Internal quotation marks omitted.) Hayes v. Caspers, Ltd. 90 Conn.App. 781, 801-02, 881 A.2d 428 (2005) quoting. Sanders v. Officers Club of Connecticut. Inc., 196 Conn. 341, 349-50, 493 A.2d 184 (1985).
While the defendants have at great length contested the plaintiffs’ ability to prove then- allegations of Ham’s intoxication and the defendants’ recklessness in serving al cohol to him, through their argument and documentation in their memorandum of law, a claim of recklessness is ordinarily a fact to be determined by the trier of fact. See Dean v. Nowacki, Superior Court, judicial district of Litchfield, No. CV 99 0081044, 2001 WL 51832 (Jan. 2, 2001) (Cermins, J.) citing Coner v. Chittenden. 116 Conn. 78, 81-82, 163 A. 472 (1932); Reilly v. Panaroni, Superior Court, judicial district of New Haven at New Haven. No. CV00 0439030, 31 Conn. L. Rptr. 104. 2001 WL 1659493 (Dec. 3, 2001) (Silbert. J.).
While we have attempted to draw definí tional distinctions between the terms willful, wanton or reckless, in practice the three terms have been treated as meaning the same thing. The result is that willful, wanton, or reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of dan - ger is apparent ... It is at least clear ... that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement,: or confusion, and more than mere *591 thoughtlessness or inadvertence, or simply inattention ...
Viewing the evidence presented most favorably to the plaintiff, we conclude that the jury reasonably, logically and legally could have found that the defendants had exercised willful, wanton and reckless misconduct in selling alcohol ... It is the jury’s right to draw logical deductions and make reasonable inferences from the facts proven.
Coble v. Maloney, 34 Conn.App. 655, 670-71, 643 A.2d 277 (1994).
As to the plaintiffs’ Fourth Count of their Amended Complaint, the court finds that there are sufficient genuine issues of material fact as to whether the defendants recklessly served alcohol to Frank Ham, the operator of the motor vehicle in which the decedent was a passenger and as to whether Ham was intoxicated at the time he was allegedly served alcohol by defendants. Summary Judgment as to the Fourth Count is hereby denied.
In recklessness cases, as in discrimination cases, the state of mind of the Defendant is at issue. Summary judgment should be granted sparingly because careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of recklessness. See Mandell v. County of Suffolk, supra.
The Defendant relies on the Palmer deposition in which Mr. Palmer testified as to signs of the obviously visible intoxication of the Plaintiff. Because, the Defendant Er-ogues, this testimony concerned a time after The Plaintiff was last served alcohol by the Defendant, it cannot support a finding that The Plaintiff was obviously visibly intoxicated where he was so last served. The Plaintiff, however, counters that the evidence in the deposition taken as a whole 'hows that the Plaintiff was drinking heavily before he arrived at the Defendant’s establishments and that the Plaintiff was obviously intoxicated where he was served at Lucky’s and the Dubliner.
The Plaintiff also submitted the affidavit of an expert witness which the Plaintiff summarized as follows:
“Finally, attached to this Memorandum and made a part hereof is the Expert Witness Report of Brian Pape, Ph.D. Dr. Pape opines that, based on the information provided to him, Ms training and education and generally accepted medical and scientific principles that on the night of the incident which is the subject of this complaint, Mr. Murphy drank approximately 13 alcoholic drinks. (Report of Dr. Pape, page 10). Dr. Pape further opines that Mr. Murphy’s Blood Alcohol Content (BAG) at the time of his last service of alcohol was between 0.16% and 0.19%. (Report of Dr. Pape, page 13). Additionally, Dr. Pape opines that most people with BACs of 0.15% exhibit visible or obvious signs of intoxication, and that the deposition testimony regarding Mr. Murphy’s appearance, behavior and demeanor is consistent with visible or obvious indicia of intoxication. (Report of Dr. Pape, page 13). Finally, Dr. Pape concludes that Mr. Murphy’s risk of falling was so greatly increased, that it would be reasonable to conclude that the adverse affects of the alcohol caused Ms fall. (Report of Dr. Pape, page 13).” :
“For the purposes of an expert’s opinion, the expert’s ‘personal knowledge’ of ‘facts’ is comprised of those materials on the basis of which he properly may render his opinions ... Furthermore, an expert’s opinion is, for purposes of § 381, a ‘fact’ that would be admissible at trial, assuming that the expert is qualified to render such an opinion,” Barrett v. Danbury Hospital., 232 Conn. 242, 251-252, 654 A.2d 748 (1995) (cita *592 .tions omitted.) (§ 381 of the Connecticut Rules substantially equivalent to our Rule Sec. 49.)
Considering the evidence, and the inferences that might reasonably be drawn from this evidence, in a light favorable to the Plaintiff, the Court concludes that there are genuine issues of material fact as to whether the Defendant continued to serve the Plaintiff despite observable or manifest signs of intoxication. Careful scrutiny of the factual allegations at trial may reveal circumstantial evidence to support the required inference of recklessness.
The Defendant, Plan B, LLC’s Motion for Summary Judgment is denied.