*L.S. v. Webloyalty.com, Inc. et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of December, two thousand sixteen.

Present:
>    DENNIS JACOBS,
>    BARRINGTON D. PARKER,
>    DEBRA ANN LIVINGSTON,
>        *Circuit Judges*.

───────────────────────────────────────

L.S., a minor, by P.S., his parent and next friend, on behalf of himself and all others similarly situated

>        *Plaintiff-Appellant*,

        v.                                                      15-3751

WEBLOYALTY.COM, INC., VISA INC., GAMESTOP CORPORATION,
>        *Defendants-Appellees*,

AMAZON.COM, INC.
>        *Defendant*.*

───────────────────────────────────────

For Plaintiff-Appellant:              DAVID C. KATZ, WeissLaw LLP, New York, New York

───────────────────────

* The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

| For Defendants-Appellees Webloyalty.com, Inc. and GameStop Corporation: | JAMES W. PRENDERGAST (John J. Regan, Anant K. Saraswat, *on the brief*), Wilmer Cutler Pickering Hale and Dorr LLP, Boston, Massachusetts |
|---|---|
| | James E. Nealon, Withers Bergman LLP, Greenwich, Connecticut, *on the brief* |
| For Defendant-Appellee Visa, Inc.: | ROBERT C. MASON, Arnold & Porter, LLP, New York, New York, (Matthew Eisenstein, Washington, DC, *on the brief*) |
| | Jonathan B. Orleans, Pullman & Comley LLC, Bridgeport, CT, *on the brief* |

Appeal from a judgment of the United States District Court for the District of Connecticut (Haight, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part, **VACATED** in part and **REMANDED** for further proceedings consistent with this order.

Plaintiff-Appellant L.S., a minor at the time of the transaction at issue in this case, appeals from a judgment of the United States District Court for the District of Connecticut (Haight, *J.*) granting the motion to dismiss by Defendants-Appellees Webloyalty.com, Inc. ("Webloyalty"), GameStop Corporation ("GameStop"), and Visa, Inc. ("Visa"). We assume the parties' familiarity with the facts, procedural history of the case, and the issues on appeal.

## A. Background

This appeal stems from the dismissal of a putative class action filed against Webloyalty, an online discount savings website, GameStop, an online retailer, and Visa, a major global payment services company. Appellant's case, though styled as a putative class action, turns on a single transaction in which he was allegedly deceived into enrolling in a fee-based monthly discount club operated by Webloyalty. The transaction occurred in late 2009, when appellant

2

purchased a video game from the website GameStop.com. In the course of executing his purchase, appellant alleges that he unwittingly registered for Webloyalty's "Shopper Discounts" program by entering his personal information on a webpage integrated into the GameStop check-out process. The Webloyalty enrollment page (the "Enrollment Page") advertised a $20 GameStop coupon and included references to GameStop throughout its description of Webloyalty's membership program. The page at issue required appellant to enter the last four digits of his debit card number and to enter and verify his email. He apparently did so, and GameStop thereafter transferred appellant's full billing information on to Webloyalty.[1]

After a thirty-day "free trial" period had elapsed, Webloyalty debited the first of what would be several $12 monthly membership fees from appellant's account, with "Shopper Discounts" noted as the payee. Appellant claims that Webloyalty offered the free trial period to ensure that the debit it made from his account a month later went unnoticed.[2] The debits continued in the months thereafter, though in April 2010, when appellant's account had insufficient funds, no debit was made. Webloyalty did not flag that payment as past due either with Visa, appellant's debit card company, or with appellant's bank.

These debits continued through August 2010, when appellant filed the instant action. Appellant's complaint alleges, *inter alia*, that he was not aware that he had been enrolled in the Webloyalty monthly membership program, that he never received the promised $20 Gamestop coupon, and that he in no way benefitted from his membership or the discounts it claimed to offer. Appellant complains that his allegedly unauthorized enrollment in the Webloyalty membership program, and the deceptive tactics Webloyalty and Gamestop used to induce it,

---

[1] Appellant, following terminology adopted by a report issued by the Senate on similar marketing practices (the "Senate Report"), terms this a "data pass."

[2] Appellant, again following the Senate Report, terms this the "free-to-pay conversion."

3

violated federal and state law.  As relevant here, his complaint alleges (1) fraud (against Webloyalty and GameStop); (2) unfair or deceptive trade practices in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a – 42-100q (against Webloyalty, GameStop and Visa); and (3) violations of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693 – 1693r (against Webloyalty and Visa).   Defendants moved to dismiss, the district court granted this motion with respect to all appellant's claims, and this appeal followed.

We review the district court's dismissal of a complaint *de novo*, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. *Schlessinger v. Valspar Corp.,* 686 F.3d 81, 85 (2d Cir. 2012).   Because the details of the Enrollment Page were integral to, and implicitly relied on throughout, appellant's complaint, the district court properly considered the Enrollment Page in evaluating the merits of the motion to dismiss.   *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).   We similarly look to the Enrollment Page in adjudicating this appeal.

### B.  Fraud

The district court dismissed appellant's fraud claim on the ground that the allegations in his complaint were not pled with the particularity Federal Rule of Civil Procedure 9(b) requires. Rule 9(b) "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."   *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015).

The district court correctly held that none of appellant's allegations, which focused heavily on the design of the Enrollment Page, are sufficient to ground his fraud claim.   For

4

instance, appellant makes much of the fact that the Enrollment Page mentions GameStop eighteen separate times. But appellant does not contest GameStop's connection to the membership program. In fact, appellant's own allegations suggest that GameStop had a financial interest in helping Webloyalty enroll members, as GameStop received a fee for each member registering through its website. Similarly, appellant alleges that GameStop directed him to the Enrollment Page prior to the completion of the checkout process, and that other elements of the webpage's design fraudulently induced him to sign up for Webloyalty's program. But, as the district court correctly observed, the Enrollment Page is nothing more than what it claims to be: an offer to join Webloyalty's discount and rewards program. Absent allegations of specific fraudulent statements by Webloyalty or GameStop, appellant's claim for fraud fails the Rule 9(b) analysis.

Appellant also complains that he was deceived by the representation on the Enrollment Page that registering for the Webloyalty program would make him eligible for a $20 GameStop coupon, which, he alleges, he never received. But appellant does not allege that he relied on the coupon offer in enrolling for the program. Moreover, because the core of appellant's allegation is that GameStop and Webloyalty fraudulently enrolled him in a program he knew nothing about, he cannot simultaneously claim that he relied on the details of Webloyalty's offer in deciding to enroll. To succeed on his fraud claim, appellant must clearly allege his reliance on representations made by the defendants in deciding to register for the Webloyalty membership program. *See Weinstein v. Weinstein*, 882 A.2d 53, 63 (Conn. 2005). Because appellant does not, and cannot, do so here, the district court properly dismissed his fraud claim.[3]

---

[3] A similar point holds for appellant's allegations regarding Webloyalty's use of the free-to-pay conversion. Appellant cannot ground a fraud claim in elements of a membership program he claims he was entirely unfamiliar with.

**C. Connecticut Unfair Trade Practices Act**

Once the district court concluded that appellant's fraud claims failed to allege a violation with the particularity Rule 9(b) requires, it dismissed the CUTPA claim without separate analysis, on the basis that the facts supporting this claim were identical to those grounding appellant's fraud claims. Specifically, after concluding in its analysis of appellant's fraud claim that he had implicitly authorized Webloyalty's monthly charges to his account, the district court held that, because appellant had authorized the Webloyalty charges, his CUTPA claims were not viable. In the circumstances of this case, this approach was erroneous.

A deceptive practice violates CUTPA if its use is liable to cause substantial injury to consumers. *See De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 849 A.2d 382, 388 (Conn. 2004). Certain deceptive practices may cause substantial injury to consumers even if these practices do not constitute common-law fraud, and it is therefore well-established under Connecticut law that a plaintiff bringing a CUTPA claim is not required to either allege or prove fraud or a predicate misrepresentation. *See Willow Springs Condo. Ass'n, Inc. v. Seventh BRT Dev. Corp.*, 717 A.2d 77, 100 (Conn. 1998). Though complaints alleging CUTPA violations may frequently lay out facts that the plaintiff contends support both common-law claims and claims under CUTPA, the standards governing the two sets of claims are not always the same. *See Associated Inv. Co. Ltd. P'ship v. Williams Assocs. IV*, 645 A.2d 505, 510 (Conn. 1994) (listing differences between a CUTPA claim and certain corresponding claims framed under the common law). To the extent that they diverge, dismissal of a plaintiff's CUTPA claim is not warranted unless the facts as alleged do not independently support a CUTPA claim.

Here, appellant alleges facts with respect to Webloyalty and GameStop supporting an independent CUTPA claim. First, appellant alleges not only that Webloyalty and GameStop

had designed the Enrollment Page to deceive GameStop customers into enrolling in Webloyalty's membership program, but also that GameStop and Webloyalty employed the data pass to enable them to convey his personal financial information without his direct knowledge and utilized the free-to-pay conversion to move him from the free trial period into the paid membership program without his consent. Neither appellant's complaints about the data pass nor his complaints about the free-to-pay conversion can fairly be termed "grounded in fraud," as opposed to unfair trade practices, as these allegations are not tied to specific representations made by Webloyalty or GameStop. We are doubtful that, even assuming Rule 9(b) applies to certain CUTPA claims, Rule 9(b)'s particularity requirement would apply to a CUTPA claim premised on these facts. But, assuming *arguendo* that Rule 9(b)'s pleading standards would apply, appellant's allegations with respect to these practices and their use are detailed enough to successfully plead this claim.

Further, though appellant's allegations about the Enrollment Page turn on his characterization of certain representations made therein, to the extent that the fault with his fraud claim lies in his failure adequately to allege reliance, that issue does not affect the viability of his CUTPA claim. *See Associated Investment*, 645 A.2d at 510 (observing that reliance is not an element of a CUTPA claim). For instance, even if appellant did not rely on the representation that he would receive a $20 GameStop coupon in registering for Webloyalty membership (because he was not aware that he was registering for Webloyalty membership), the coupon offer might have encouraged him to disclose his personal information to GameStop via the Enrollment Page. Because appellant alleges that neither Webloyalty nor GameStop ever supplied the promised coupon, his underlying contention, which is that he was effectively the victim of a coordinated bait and switch, is sufficient to frame his claim that Webloyalty and GameStop's

7

actions were "unfair and deceptive" in violation of CUTPA. *See Willow Springs*, 717 A.2d at 100 (holding that a defendant's failure to communicate known environmental issues with a condominium development to the plaintiff could reasonably be held deceptive under CUTPA). The district court therefore erred in dismissing appellant's CUTPA claim against Webloyalty and GameStop, and, accordingly, we vacate its entry of judgment on this claim with respect to Webloyalty and GameStop.[4]

### D. The Electronic Funds Transfer Act

Appellant's complaint also alleges two violations of EFTA by Webloyalty.[5] First, appellant claims that Webloyalty violated EFTA by receiving unauthorized electronic fund transfers in violation of 15 U.S.C. § 1693e(a). Second, appellant alleges that Webloyalty violated EFTA by failing to provide him a copy of the authorization for the transfer, also in violation of 15 U.S.C. § 1693e(a).

Appellant's first claim was properly dismissed. Because appellant authorized the transfer of funds to Webloyalty, the transfer of funds itself did not violate EFTA. The relevant section of EFTA provides that "[a] preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing." 15 U.S.C. § 1693e(a). Appellant clearly gave written authorization for the transfer of funds from his account by entering his personal information – including his name and the last four digits of his debit card – on the Enrollment Page. The Enrollment Page specifically noted the terms of the transfer,

---

[4] By contrast, the district court properly dismissed appellant's CUTPA claim against Visa. With respect to Visa, appellant's complaint alleges, at worst, a violation of Visa's internal rules for monitoring accounts. But, even assuming the truth of appellant's allegation, this claim fails in the face of Connecticut law holding that, for a plaintiff to prevail on a CUTPA claim, the defendant must have been the proximate cause of the plaintiff's injuries. *See Abrahams v. Young & Rubicam, Inc.*, 692 A.2d 709, 712 (Conn. 1997).

[5] Appellant's EFTA claim against Visa was properly dismissed. Only the financial institution that is the custodian of the consumer's account or the recipient of the funds transfer can be subject to liability under the statute. *See* 15 U.S.C. §§ 1693a(9); 1693e. Visa is neither.

including the amount to be deducted from appellant's account and the frequency with which the scheduled debits would take place. To the extent regulatory guidance is relevant here, this disclosure also appears to be in full compliance with applicable guidance from the Federal Reserve. *See* 12 C.F.R. § 1005, supp. I, cmt. 10(b)-6 (staff interpretations) (providing that an "authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable"). Because appellant authorized a transfer of funds in accordance with the terms disclosed on the Enrollment Page, Webloyalty did not violate EFTA in debiting appellant's account accordingly.[6]

However, appellant's second claim, that Webloyalty failed to provide him with a copy of his funds transfer authorization, was not properly adjudicated at the motion to dismiss stage. In ruling on this claim, the district court looked primarily at a separate document, an email allegedly later sent to appellant regarding his Webloyalty membership, and held that some of the language contained therein was sufficient to satisfy EFTA's requirement that "a copy of [the consumer's written] authorization shall be provided to the consumer when made." *See* 15 U.S.C. § 1693e(a). We express no view as to the merits of that determination, but merely reiterate that, under Federal Rule of Civil Procedure 12(d), before a district court may evaluate the legal effect of documents not integral to the complaint, it is "obligated to convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56." *Chambers*, 282 F.3d at 154.

---

[6] Appellant argues that the transfers from his account were "unauthorized" under EFTA because Webloyalty did not have actual authority to debit his account under applicable agency law. However, in support of this proposition, appellant cites only to the EFTA's definitional section – which includes a background definition of "unauthorized electronic fund transfers" relevant to a different section of the statute. *See* 15 U.S.C. §§ 1693a(12); 1693g. We do not find this definition relevant or helpful in interpreting the section of EFTA that is actually at issue in this case.

This rule is applicable here.   In defending against appellant's EFTA copy requirement claim, appellees introduced an email describing the benefits of Webloyalty membership and including, in a footer, details about the debits they argued that appellant had authorized. However, this email was not referenced in appellant's complaint, not relied on in the course of the complaint's allegations, and appellant contends that he never saw it.   To the extent that the district court relied on the affidavits submitted by Webloyalty employees authenticating the email to justify a ruling on the email's legal effect, this was a determination properly made on summary judgment, not in response to a motion to dismiss.   *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

If, given the arguments of the parties and the documents submitted to the court, the district court believed that the matter was ripe for summary judgment, it should have converted the motion to dismiss into one for summary judgment.   *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000).   The safety valve of Rule 12(d), which permits conversion so long as the district court permits parties the "opportunity to present all the material that is pertinent" to the specific issue that is before the court on the motion to dismiss, is designed for just such a situation.   The fact that the district court had already allowed some discovery here does not change this analysis.   To the contrary, if, in the district court's assessment, discovery on the relevant claims was properly closed, it could have exercised its authority to convert and then evaluated whether Webloyalty's email sufficed to meet with its statutory obligations in light of all the undisputed facts.   Since that was not done, we vacate as to the grant of the motion to dismiss on appellant's second claim that Webloyalty violated EFTA by failing to provide him with a copy of his funds transfer authorization.

\* \* \*

10

We have considered appellant's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court in part, **VACATE** in part, and **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk